(86 South. 825)

No. 23682.

## WHITTAKER v. ILLINOIS CENT. R. CO.

(Jan. 3, 1921.)

*(Syllabus by Editorial Staff.)*

1. Railroads ⬚348(3) — Evidence held to show crossing flagman did not see buggy or road's motorcar until too late.

In an action against a railroad for injuries to plaintiff in collision between his buggy and a motorcar of the railroad at a street crossing, evidence *held* to show that the railroad's flagman at the crossing was standing at or near his shanty on the corner, and did not see the motorcar until shortly before the collision, or did not see the buggy till it had reached a point where the warning which he gave was too late.

2. Damages ⬚132(2) — $3,000 for probably permanent injuries not excessive.

Where plaintiff, whose buggy was collided with by defendant railroad's motorcar at a crossing, had two ribs broken, was bruised and received contusions on the greater part of his body, spent 8 or 10 days in the hospital, several weeks in his room, and was not able to work for 3½ months, and was in addition subjected to adhesion of the pleura, causing pain and shortness of breath, a condition which would likely be permanent, judgment in his favor against the railroad for $3,000 was not excessive.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Robert Whittaker against the Illinois Central Railroad Company. From judgment for plaintiff, defendant appeals; plaintiff praying that the award of $3,000 be increased to $10,000. Judgment affirmed.

Hunter C. Leake, Lemle & Lemle, and Arthur A. Moreno, all of New Orleans, for appellant.

John P. Sullivan and David Sessler, both of New Orleans, for appellee.

DAWKINS, J. This is an action in damages for personal injuries received by plaintiff as the result of a collision between the buggy in which he was traveling and a motorcar of defendant, at the crossing of Magnolia and Euphrosine streets in the city of New Orleans.

The issues are the same; in fact, the case was submitted (as to the circumstances of the collision) entirely upon the record in the case of Frederick W. Lincks against the same defendant, No. 21,349 on the docket of this court, and reported in 143 La. 445, 78 South. 730. Lincks was riding in the buggy with the present plaintiff and was injured in the same collision.

The lower court gave judgment for plaintiff in the sum of $3,000, defendant has appealed, and plaintiff has answered praying that the award be increased to $10,000, the sum originally demanded.

### Opinion.

As said in the Lincks Case the question of liability depends largely upon whether or not the flagman of the defendant company maintained at this crossing was at his post of duty and gave warning to the occupants of the buggy of the approach of the motorcar in time to have prevented the accident, had the warning been heeded.

We take it that, inasmuch as this court had found that the flagman, as a matter of fact, had not timely performed his duty in the Lincks Case, and that this was the proximate cause of the collision, the lower court, in deciding this case upon the identical record, considered its determination of that question largely a matter of form. Hence we would hardly be justified in attaching as much importance to his decision on the facts as we might to that of the district judge in the other case.

[1] In view of the earnestness with which counsel for defendant has pressed upon us a reconsideration of the facts of the case, we have again carefully reviewed the record, and it must be conceded that it is not all one.

way, to say the least. The important questions, however, are as to just where the flagman was and the time at which he gave the warning. Taking into consideration all the different angles from which the different witnesses saw the matter, as revealed by their testimony, as well as the physical circumstances, we think it fairly well established that he was standing at or near his shanty on the corner which was to the right of the buggy and to the left of the motorcar. We think it also fairly appears that he either did not see the motorcar until a short interval before the collision, or he did not see the buggy until it had reached a point where the warning which he gave was too late. In either event, his failure to timely see and warn of the danger was the cause of the accident.

Defendant's counsel argued that it would require the assumption of conduct equally as extraordinary on the part of the flagman, put there to protect life and property, to say that he deliberately allowed the buggy to go upon the track when he saw the car approaching, as it would have been for the plaintiff to have persisted in going upon the crossing in the face of positive warning. However, this leaves out of consideration the frailties of human nature, as a result of which experience has taught, as illustrated almost daily by disasters in commerce and industry that where man is called upon to constantly perform a given task, it eventually comes to the point where the task is performed subconsciously. This may go on for a great length of time, and then suddenly, and without apparent cause or possible explanation, the subconscious sense fails to function and disaster is the result.

We think it established by almost all the evidence that just at the moment of collision, or an instant before, the flagman made frantic efforts to warn the buggy; but we believe this was the first time, and that it came too late.

In thus concluding, we, for the reasons above suggested, do not find it necessary to attribute to the flagman reprehensible conduct of the nature defendant's counsel seems to think our decision in the Lincks Case implies. In our opinion, it would be more reasonable to assume that he did not become aware of the buggy's danger until too late than to believe that the occupants of the vehicle persisted in going over a railroad track as to which their view was obstructed, in the face of positive and timely warning.

[2] Counsel also contends that the amount allowed by the lower court is excessive. The record shows that after the collision the horse ran away, with the plaintiff on the shafts, and was finally stopped when the plaintiff regained hold on the reins and pulled him into a woodyard; that plaintiff had two ribs broken, was bruised, and received contusions on the greater part of his body; that he spent some 8 or 10 days in the hospital, and later several weeks in his room at home; that he was unable to return to work until the middle of September (the accident having happened the fore part of June); that he now suffers adhesion of the pleura, causing pain and shortness of breath, so that one lung cannot be expanded as much as the other; and that this condition will likely be permanent.

All in all, we think the amount allowed by the lower court fair and reasonable.

For the reasons assigned, the judgment of the lower court is affirmed, with costs.