No. 2103

Second Circuit Appeal

## JANE HAMPTON AND HUSBAND v. LOUISIANA AND NORTHWEST RAILROAD COMPANY

(March 2, 1925, Opinion and Decree)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Railroads—Par. 59, 64, 65.**

The driver of a wagon was not negligent in failing to stop, look and listen on crossing a switch track of a railroad, the view of which was obstructed by a freight train in front.

2. **Louisiana Digest—Railroads—Par. 62.**

It was negligence on the part of the railroad company to back this train on the public crossing without a bright light on the forward end of it or without a lookout at the crossing to warn the inhabitants of the road of its approach.

3. **Louisiana Digest—Damages—Par. 104.**

The plaintiff, due to an accident causing a slight injury to her leg, was in bed a month and could not work for about four months. An award for $300.00 damages is proper.

(Civil Code, Art. 2315. Editor's note.)

Appeal from the Third Judicial District Court of Louisiana, Parish of Bienville. Hon. J. E. Reynolds, Judge.

This is a suit to recover damages for personal injuries.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Hall, Johnson & Hall, of Shreveport, attorneys for plaintiffs, appellants.

Richardson & Atkins, of Homer, attorneys for defendant, appellee.

ODOM, J. This is a suit to recover damages for an injury which the plaintiff, Jane Hampton, received in a collision between a wagon in which she was riding and a train owned and operated by the defendant company.

Plaintiff alleges that she was travelling in a wagon north along a public highway ii the town of Gibbsland and as she was crossing a switch track of the defendant company a train was backing from the east to the west down said switch track and struck the wagon, demolishing it and bruising and injuring her.

She alleges that her injuries caused her great pain and suffering, requiring medical skill and attention, and that she was confined to her home for a short term.

She places the amount which she should receive for her injuries and sufferings at $1000.00 and asks for judgment for that amount.

She alleges that the injuries were caused by the fault and negligence of the railroad company and its employees in backing a train across the public road on a dark night without any light and without giving any signal of its approach and without keeping a lookout on the rear end of the forward car.

The defendant answered denying any negligence on the part of its employees in the operation of its train and especially sets up contributory negligence on the part of the plaintiff.

The case was tried before a jury which rejected the plaintiff's demands; from which verdict and judgment she has appealed.

The accident of which plaintiff complains occurred at Gibbsland after nightfall on December 26, 1921.

There are two railroads running through that town. The V. S. & P. and the Louisiana & Northwest Railroad, owned by the defendant in this case.

The V. S. & P. runs east and west, and the Louisiana & Northwest runs in a general north and south direction.

The V. S. & P. has four tracks; the main line and three switch tracks, all running east and west and about paralled to each other. On the north side of the north track there is a freight depot which has a cotton platform at the west end. On the north side of this freight depot the defendant company has two switch tracks running about parallel to each other east and west and running about parallel with all the tracks of the V. S. & P. The first or south track of the defendant company runs very near to the freight depot of the V. S. & P., and the second or north track is only a few feet north of the first one.

The defendant company's main line track crosses the V. S. & P. tracks at a point considerably east of the freight depot. The defendant's two switch tracks branch off from its main line at a point in the vicinity of where it crosses the V. S. & P.

There is a public road running north and south through the town crossing at about right angles the four V. S. & P. tracks and the two switch tracks of the defendant company, and runs very close to the west end of the cotton platform attached to this freight depot.

On the night of the accident the plaintiff, a colored woman, and three other colored women, were riding in a wagon drawn by a pair of mules going north on this public road. The four women were seated on a spring seat. The team was being driven by a colored boy about thirteen years old who was seated in front on the dashboard. When they got to the crossing they found it blocked by trains on the V. S. & P. tracks. There were three trains there at the time—one passenger, going west, one going east, and a freight train going east. The parties in the wagon stopped and waited until the two passenger trains left. The freight train was then "cut" and the public road cleared for the wagon to pass. Seeing that the roadway was clear, the driver of the wagon proceeded on his way north, passing over the four tracks of the V. S. & P. and over the first or south track of the defendant company; and when the wagon reached the second or north track of the defendant company it was struck by one of defendant company's cars which was moving west on this switch track. The train on the defendant switch track was composed of an engine, a tender and about twelve cars, and was backing west. It appears that the mule had passed over the track and that the railroad car struck the wagon only. However, one of the mules was in some way jerked back and caught under the moving train and killed. The wagon was demolished, one of the occupants was killed and the plaintiff and one of the other occupants were injured. As already stated defendant pleads contributory negligence on the part of the plaintiff and all other occupants of the wagon and pleads, also, that its employees were guilty of no negligence, and especially sets out that it was maintaining a lookout and a light on the forward end of the train and that the bell was ringing, etc.

If the plaintiff, in approaching this railroad crossing, failed to use due and ordinary care to avoid the accident and her negligence materially contributed to the accident or was the proximate cause thereof, she cannot recover even though the defendant company was negligent in the operation of its train; unless the railroad company was guilty of such gross negligence as to imply wantonness and disregard of the safety and rights of the inhabitants of the public road.

We must, therefore, inquire first whether the plaintiff was guilty of such contributory negligence as to bar recovery, if it be conceded that defendant was guilty of negligence, such as charged by plaintiff.

The accident occurred on a dark night. These colored people all lived north of the town of Gibbsland but on this night had been in the south end of the town and had started home in the wagon. They proceeded north on the public highway until they reached the tracks of the V. S. & P. railroad and finding the crossing blocked by trains they stopped and waited until the two passenger trains cleared the track and until the freight train was "cut" and opened so that their passage way along the public road was made clear. Seeing that the roadway was clear, they proceeded north until they reached the second or north track of the defendant company, where the accident occurred. An effort was made to show that the driver and the occupants of the wagon were all in a hilarious mood, were going very fast over the crossing and were paying no attention at all to what was happening around them, and that on account of such carelessness and inattention they did not see the light on the train; did not hear the bell or the noise of the train. However, we are not convinced that their conduct was out of the ordinary or anything except what might be expected under the circumstances.

They all say they looked and saw no light, listened but heard no whistle or noise of a moving train. Their testimony on this point is not contradicted because there was no one else there who could know whether as a matter of fact they did stop and listen. But counsel for defendant urge the point that if they had listened they would have heard the bell and the moving train. Our view, however, is that there was no light on the forward end of the train. It is certain there was no bright light there. All that defendant claims as to the light is that the flagman was on the forward car with a lantern. Even this is denied by all the plaintiff's

witnesses and is not conclusively shown by those of the defendant; and it is not at all certain that the whistle was sounded or that the bell was ringing, although the defendant's employees say that the bell was ringing. None of the plaintiff's witnesses, even those who appear to have no interest in the case, heard the bell or whistle, and some of the defendant's witnesses who claim to have been near the scene of the accident say they did not hear them.

Quince Hewett, the driver, admits that he did not stop before attempting to cross the defendant's tracks where the accident occurred. Defendant's counsel urge that inasmuch as he failed to observe the well established rule that before entering upon a railroad crossing one must stop, look and listen, recovery is barred.

We do not think it was his duty to stop, look and listen before attempting to cross the switch track where the accident occurred. It must be borne in mind that at this point there are six tracks, all running parallel or nearly so, four on the south side of the freight depot and two on the north side. This is what may be termed one crossing. The driver did stop before entering the crossing. He waited until the two passenger trains cleared the crossing and until the freight train which was there was "cut" and the roadway cleared. He had a right then of course to proceed on his way. We do not think it was necessary for him to stop at each one of these switch tracks. It was his duty to stop and to listen before entering the crossing. This he did, and waited until the three trains then blocking it cleared out, leaving the roadway to him. We think he had a right to proceed without stopping again under the circumstances of this case.

Our finding therefore is that the driver

was not negligent is attempting to make the crossing as he did.

The remaining question is whether the railroad company was negligent in the operation of its train on this occasion.

As stated, this was a dark night and the train was backing over the crossing. There is no street light there and it is not pretended that the defendant had a lookout stationed there or that it had a bright light on the forward end of the lead car. The most that it claims it that the flagman was on the forward car with a lantern and it is not suggested that this lantern reflected the light any distance. But a careful examination of the testimony has failed to convince us that there was any light at all on the forward car.

The witnesses for the defendant all claim that a man by the name of Cathay was on the forward end of this train and that he had a lantern, but there is not one of those witnesses, in our opinion, who was near enough to the scene of the accident and near enough to the forward end of this train to tell definitely whether Cathay was on the lead car or not. Each and every one of the plaintiff's witnesses testified that they saw no light on the forward end of the train and some of them are positive that none was there. We think the testimony makes it clear enough that the man Cathay was on the top of a box car either at or near to the end of the train when it started backing west. But his testimony makes it clear that before reaching the crossing they coupled on to a coal car loaded with lumber and, of course, shoved this car west on the switch track. It was this car, loaded with lumber, which struck the wagon on which plaintiff was riding. The testimony is by no means clear that Cathay ever reached this forward car and we think if he reached it at all he did not go to the forward end of it. The man Cathay says that he

was on the front end of the forward car with his lantern and that he called to these people to lookout about the time the train struck them. He says that he saw them but did not know in what direction they were going. The fact that he could not tell which way they were going indicates that he was mistaken about seeing them at all. If he had been on the forward end of the lead car with a bright light he not only could have seen them but could have told the way they were going. He says that as soon as the train hit the wagon he got off on the south side and went back east near the engine where he met the conductor and told him that they had struck a wagon. He says he did not wait to see the results of the collision.

The testimony shows that the mules had crossed this track and that the wagon only was struck by the train and that after the collision the mules, the remains of the wagon and all the occupants thereof were on the north side of the track, and therefore Cathay, having gotten off on the south side of the track, could not see the results of the collision. It does not seem reasonable to us that he would have gone a distance of twelve car lengths to tell the conductor that a collision had taken place between the train and a wagon if he did not know that any damage was done. All the witnesses for plaintiff who were near the scene of the accident say that Cathay was not on the forward end of the train when the collision occurred and was not present immediately after the accident; and in view of their testimony and of his own unreasonable account of his conduct we are inclined to believe that he was not there.

Will Marshall, an employee of the V. S. & P. says that he was on his engine eating supper when the collision occurred, but was looking directly at it. He says that when

the collision occurred the man nearest the forward end of the train was getting down from the top of a box car onto the coal car; that he was climbing down the ladder when the coal car hit the wagon. He says, also, that this man was east of the freight depot at the time of the collision. If he is correct in this statement, and we think he is, then Cathay was not where he says he was.

C. C. Graves, another employee of the V. S. & P., says he was standing on the crossing, presumably considerable south of the place where the collision occurred, and that he heard an outcry and looked around and saw a light, but does not know which car it was on.

R. R. Griggs, another witness of the defendant, says he was standing on the main line of the V. S. & P. and heard an outcry and a crash and immediately went to the scene and when he got there Cathay was there trying to see what he had done. This contradicts the testimony of Cathay who says he did not see what he had done but went back to tell the conductor.

Jake Murrell, another witness for defendant, says he saw a man on the top of a car giving distress signals.

Dave Wiley, W. J. Stark, and C. J. Ketcham, all employees of the defendant, say that Cathay had a light and gave distress signals, and Ketcham, the conductor, says that he was near the engine and that he could see Cathay with his lantern on the forward car. We are of the opinion that this man, being at the extreme east end of the train, could not tell whether the light was on the end of the train or whether it was a few car lengths from the end.

Jake Riddle says he was on the train, about the middle, and that Cathay was on the rear end of it.

Harry Johnson and V. Daniel, think a man was on the rear car but do not know that he was on the end of the car.

Our conclusion from all the evidence is that Cathay was probably on the lead box car going west but that he did not get on the coal car loaded with lumber until about the time it struck the wagon. The testimony shows that this coal car was very close to the public road at the time the train coupled to it, and that the collision took place almost immediately, and that the light, if any, was at least one car length from the end of this car. The plaintiff was going north on this public highway. To the right of the road and very close to it was the freight depot of the V. S. & P. The train of the defendant company came down from behind this depot. It is also shown that there was a box car on the first or south track of the defendant company immediately north of the depot. This depot and the box car obstructed the view of the plaintiff and prevented her from seeing the light on the train as it came west down the track. However, the cotton platform extends some twenty-five or thirty feet west of this depot, which left a considerable space to the west of the depot and the box car above referred to; and if there had been a light on the coal car which was loaded with lumber and which struck the wagon it could easily have been seen and this accident avoided. This lead car was very near to the road; there was no light on it; and of course could not be seen by the driver or the occupants of the wagon.

It was negligence on the part of the railroad company to back this train on the public crossing without a bright **light** on the forward end of it or without a lookout at the crossing to warn the inhabitants of the road of its approach.

Maher vs. La. Ry & Nav. Co., 145 La. 733, 82 South. 872, 33 Cyc. 954.

Nash vs. Railroad Co., 153 La. 410, 96 South. 14.

Kraemer vs. Railroad Co., 144 La. 57, 80 South. 198.

Our findings are that the plaintiff was not guilty of contributory negligence in driving on the track of the defendant and that the defendant was guilty of negligence in backing over the crossing without a light or a lookout, and that the negligence of the defendant was the sole cause of the accident.

The plaintiff is therefore entitled to recover.

The plaintiff testified that she was knocked unconscious, that she was carried to the office of a physician and treated and later treated by Dr. Payne. She says she was in bed a month and could not work for about four months. The physician who attended her and dressed her wounds says her leg was slightly injured and that her wounds were superficial. He says the wounds would not have kept her from work unless there had been subsequent infection. We think an award of $300.00 would be proper in this case.

For the reasons assigned, it is therefore ordered adjudged and decreed that the verdict of the jury and the judgment based thereon appealed from be avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff, Jane Hampton, do have judgment against and recover from the Louisiana & Northwest Railroad Company the full sum and amount of three hundred dollars with five per cent per annum interest thereon from October 16, 1923, and all costs of this suit.