**POLIZZI ET AL. v. LOUISIANA RY. & NAV. CO.**

(January 13, 1930. Opinion and Decree.)
(February 17, 1930. Rehearing Refused.)

Hugh M. Wilkinson and Fred W. Oser, of New Orleans, attorneys for plaintiffs, appellees.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendants, appellants.

HIGGINS, J. This is a suit by Lawrence Polizzi and his wife, in behalf of themselves individually and also for the use and benefit of their minor son, age four years, for damages for personal injuries suffered by each of them, and for the value of a Ford automobile, clothing and doctor's bills, as further damages suffered by Lawrence Polizzi.

The accident occurred on March 17, 1925, at 10:30 p. m. at the intersection of Broad and Poydras streets in the city of New Orleans when a box car of the defendant company struck plaintiff's Ford sedan automobile, completely demolishing it and causing the alleged damages to plaintiffs.

The defendant denied liability and pleaded contributory negligence against all of the plaintiffs. The jury rendered a verdict in favor of Lawrence Polizzi in the sum of $2,350, Mrs. Polizzi, in the sum of $750, and Lawrence Polizzi, Jr., their minor son, in the sum of $1,500. From this verdict and judgment defendant has appealed.

The locus in quo where the accident occurred is as follows: Broad street is a street with a neutral ground in the center and paved on both sides and runs in a direction from uptown to downtown. Each of the paved sections is approximately 30 feet wide and the neutral ground between them about 60 feet wide. Traffic going downtown moves on the river side of Broad street and traffic going uptown moves on the lake side of this street. The Broad street bridge which crosses the New Basin canal is immediately in line with the wood side thoroughfare of Broad street and located on the uptown side of the railroad tracks.

The Illinois Central Railroad Company has 8 tracks along Poydras street running parallel with the New Basin canal and crossing Broad street at right angles. These 8 tracks are situated within the neutral ground of Poydras street. This railroad company maintains four traffic gates at the intersection of these two streets, two on the downtown side of the tracks and two on the uptown side of the tracks as a protection to automobile traffic moving on both sides of Broad street where the traffic is heavy. These gates were operated by a man stationed in a tower, which is situated in the neutral ground at the intersection of Poydras and Broad streets. The width of the Poydras street neutral ground, within which the eight Illinois Central Railroad Company's tracks lay is approximately 91 feet. The traffic gates were located at sufficient distance on both sides of the eight tracks to protect vehicles from going upon the tracks when trains were approaching in either direction.

The defendant railroad owned and maintained a single track situated 57 feet from the eighth track of the I. C. Railroad Company towards the New Basin canal or upon the uptown side of the eight tracks. The track of the defendant was outside of the I. C. Railroad Company's traffic gates. The defendant did not maintain any traffic gates with respect to its track and depended upon its train crew flagging traffic at this crossing.

At the time of the accident a train of the I. C. Railroad Company had passed, going in the direction of the river and upon the approach of its train the traffic gates of the I. C. Railroad Company were lowered by the man in the tower, and after this train passed the gates were raised.

The plaintiff was driving a Ford sedan with his wife seated in the front by his side and his little boy, age four years, seated in the rear. He was proceeding on the lake side of Broad street going uptown. As he came to the crossing in question, the I. C. Railroad Company's gates were down as its train was passing and plaintiff stopped his car about the middle of the street.

Thereafter a car in which Mr. Robert Weigand and H. M. des Bordes were riding stopped to the right of plaintiff's car and a car in which Mrs. Sol Wolff and Mrs. Jeannette Phillips were riding stopped to the left of plaintiff's car. Both of these cars were to the rear of plaintiff's car and going in the same direction as plaintiff. The car of Dr. Frederick Fenno, was also going in the same direction and was about 100 feet from the gates when they went up.

When the gates were lifted the first three cars started up with plaintiff's car about 14 feet in the lead. Dr. Fenno's car followed about 60 feet to the rear. Plaintiff crossed all eight of the I. C. Railroad Company's tracks and a space of 57 feet between the eighth track and the defendant's track. When the front part of his car was near or upon the defendant's track, it was struck by the front box car, one of 30 box cars, which were being pushed by defendant's switch engine. The air was not coupled to the cars and the train depended on the braking facilities of the engine in order to stop. After the front of plaintiff's machine became engaged with the end of the lead box car, it was dragged and shoved entirely across the neutral ground of Broad street and finally came to rest at a spot beyond Broad street, about 150 feet from where it was struck, a complete wreck. The other automobiles stopped in the space between the defendant's and the I. C. Railroad Company's tracks.

This switch train was composed of an engine and 30 cars and was proceeding on the defendant's track from the lake towards the river. The train was in charge of a train crew consisting of the engineer and fireman and a switch foreman and two switchmen. The engine was on the extreme end of the "cut of cars" towards the woods.

It appears that plaintiff was going about ten miles per hour and the train was going about five miles per hour at the time of the accident.

Plaintiff contends that the defendant was solely at fault for the following reasons:

First: Because of the absence of any light on the box cars which came silently out of the darkness across the street, where there was heavy traffic;

Second: Because there was no signal or warning given of the approach of the train, and

Third: Because of the negligence of the defendant's flagman in trying to simultaneously flag the two street crossings on Broad street.

Defendant contends that one of its switchmen, Glynn, was on the front car with a white lantern and another one, Nolan, equipped with a red fusee and a white light flagged the crossing and gave plaintiffs adequate and proper warning of the approach of the train and that plaintiffs were solely at fault in causing the accident and in the alternative, their negligence in not seeing the train and not obeying the flagman's signal to stop contributed to the accident.

The plaintiffs' witnesses were Robert Weigand, H. M. des Bordes, Mrs. Sol Wolff and Mrs. Jeannette Phillips, who were in the two cars immediately following plaintiff's car, and also themselves. They all testify that it was a dark night and that they did not see any light on the front box car; that no signal of the approach of the train was given, and that the switchman, Nolan, was over on the river side of Broad street and arrived too late to warn plaintiff of the train's approach.

The train crew, except the fireman and Glynn, who died since the accident, and Dr. Fenno testified for defendant. Dr. Fenno and Nolan testified that Nolan was at the lake side of Broad street and gave proper signal of the train's approach. The switchman, Glynn, died before the trial and Borrough, the switch foreman, says that upon receiving a "wash out" signal from Glynn he transmitted it to the engineer, who in turn testified he immediately applied the brakes and reversed his engine in order to stop quickly. They say the train stopped

in about 80 feet from the time the signal was given.

The testimony is, therefore, conflicting as to whether or not one of the switchmen was stationed on the front box car with a white light and the other switchman (flagman, Nolan) was stationed on the wood side of Broad street so as to warn the traffic proceeding uptown on Broad street.

The preponderance of the evidence convinces us that if Glynn was stationed on the front box car with a white lantern, he had placed himself in such a position that those approaching the track, in the direction in which plaintiff was coming were unable to see him; and that the switchman, Nolan, sent to flag the crossing, was on the river side of Broad street so as to protect the traffic going from uptown to downtown and when the traffic gates were raised he then attempted to hurry across the 60-foot neutral ground to the wood side of Broad street, so as to protect the traffic which was going uptown. We are satisfied that he arrived too late to warn plaintiff of the approach of the train. Had he arrived on the wood side of Broad street and waved the red fusee in the manner in which defendant's witnesses testified, there is no doubt that plaintiff and his witnesses would have seen the flagman.

The defendant's evidence shows that the lights on the bridge, some 500 feet away, were dim and, therefore, would not have been of any assistance to the plaintiff in seeing the box car approaching him from his right. We are satisfied that the crossing was not properly lighted. When the I. C. Railroad Company's gates lifted, plaintiff had a right to assume that the way was clear and that he was free from danger from approaching trains. Not only had the first gate nearest plaintiff been raised but also the second gate after the eighth track. He did just what the other automobilists did, started across confident and believing that the raising of the gates was a signal to cross as the danger was over because the train had passed.

It appears that the rails of the single track of the defendant are embedded in the asphalt of Broad street and that at nighttime it would be difficult to see them especially as this crossing is dark. It is quite apparent that the driver of an automobile would assume that all of the tracks were within the area protected by the traffic gates or if they were not within the protection of these gates, that there would be some adequate warning of the approach of trains out of the darkness. We find that there was no adequate warning of the approach of the train given to plaintiff and that the plaintiff was not at fault in not seeing the train approaching out of the darkness.

We do not find that plaintiffs were guilty of any negligence that contributed to the accident.

In the case of Cherry v. Louisiana and Arkansas Railroad Company, 121 La. 471, 46 So. 596, the court said:

"Where the distance across four railroad tracks is only 49 feet, a traveler about to cross the tracks exercises all due legal care and prudence if he stops and looks and listens before venturing upon the first track. He is not required to repeat the precaution with each of the tracks in succession."

See, also, Seelhorst v. Pontchartrain Railroad Co., 11 La. App. 586.

The evidence is conclusive that the crossing in question was a dangerous crossing and in reference to such a question the Supreme Court in the case of Eichorn v. Power Co., 112 La. 236, 36 So. 335, said:

"If a railroad company, in the management of its traffic, causes unusual peril to travelers, it should meet such peril by corresponding precautions. So, where the crossing is especially dangerous on account of its locality or mode of construction, or because the view is restricted or the track is curved, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the crossing requires."

See, also, Lampkins v. McCormick, 105 La. 422, 29 So. 952; Downing v. Morgan's Co., 104 La. 508, 29 So. 207; Ortolano v. Morgan's Co., 109 La. 902, 33 So. 914; Peart v. New Orleans-Kenner Transfer & Traction Co., 11 La. App. 11.

The flagman at a street crossing must station himself in such a position as to give proper and adequate warning to those who are about to cross the tracks of the approach of a train.

In the case of Whittaker v. Illinois Central, 148 La. 319, 86 So. 825, the court said:

"In an action against a railroad for injuries to plaintiff in collision between his buggy and a motorcar of the railroad at a street crossing, evidence held to show that the railroad's flagman at the crossing was standing at or near his shanty on the corner, and did not see the motorcar until shortly before the collision, or did not see the buggy till it had reached a point where the warning which he gave was too late."

See, also, Roby v. Kansas City Southern Railroad Company, 130 La. 880, 58 So. 696.

The learned counsel for the defendant has cited numerous authorities but we do not find them in point, because they are predicated upon the fact that the train was properly lighted or visible or that plaintiff could and should have seen the train and that due signal was given. As we have found from the evidence that these facts do not obtain in this case the cited cases have no application to the present one.

From a careful reading of the record we are satisfied that the verdict of the jury and the judgment of the lower court are correct.

As to the quantum of damages the jury rendered a verdict in favor of Lawrence Polizzi in the sum of $2,350, covering the cost of the automobile, clothing, doctor and hospital bills, loss of earnings and personal injuries and mental anguish. The expenses, property damage, and loss of earnings amounted to $1,270.30, leaving $1,179 to cover personal injuries. Plaintiff testified and he is corroborated by Dr. Danna that his left leg was badly hurt and swollen and that he had multiple bruises and contusions of his body which confined him to his home for a week and thereafter he limped for about three weeks. The evidence shows that the train dragged the Ford car over a rough surface where there were protruding cross-ties, bricks, etc., and that plaintiff was thrown out of his car after being dragged a considerable distance. He suffered great mental anguish as a result of the injuries to his wife, son and himself. We are satisfied that his injuries were serious and painful and under the circumstances, we cannot say that the award of the jury is excessive.

The jury awarded Mrs. Polizzi $750 for personal injuries sustained. Mrs. Polizzi was likewise dragged along the roadway of the defendant company in the same manner as her husband and suffered contusions and bruises all over her body, and a cut over her right knee. She suffered severe pain for very nearly a month; and she had a lump over her heart which for

a considerable period of time worried her but since has disappeared. It appears that her little boy was also dragged along the right of way of the company in the automobile which was completely demolished and the debris strewn all along the right of way and she suffered mental torture until she found him. She still complained from the nervous shock at the time of the trial. We do not feel that the amount awarded her by the jury is excessive.

The jury awarded Lawrence Polizzi, Jr., the sum of $1,500. Dr. Danna who treated plaintiff, his wife and his little boy at the Hotel Dieu, testified that the child had a lacerated wound of the eyelid and the bridge of his nose which necessitated it being sewed up; that he had a compound fracture of both bones of the left leg and that the bones stuck out through the flesh. That the fracture was about halfway between the knee and the ankle, and that the child also had bruises and contusions all over the body and that he treated the injuries for some two months. For these injuries the jury allowed the sum of $1,500 which we consider adequate.

For the reasons assigned the judgment appealed from is affirmed.

JANVIER, J. I believe that the proximate cause of the accident was the unusually confusing situation which was created by defendant and that this placed upon defendant the duty of taking extraordinary precautions. This confusing situation also explains the failure of plaintiff to notice the approaching train which, under other circumstances, he should have done.

I, therefore, concur in the decree.