### RANSOM v. KREEGER STORE, Inc., et al.*
#### No. 15075.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

Gordon Boswell, of New Orleans, for appellants.

Claude W. Duke, of New Orleans, for appellee.

JANVIER, Judge.

Miss Julia Clay Ransom, on the morning of October 6, 1933, entered the store of defendant corporation to obtain a receipt for merchandise purchased on the previous day and also to examine certain dresses she had noticed the day before. As she was walking along one of the aisles on the ground floor, she slipped and fell, sustaining severe injuries.

Charging that the fall had resulted from negligence on the part of the defendant corporation in permitting water left by a scrub woman to remain on the floor, and denying that she herself had been contributorily negligent in any way, Miss Ransom seeks judgment against defendant and also against its liability insurance carrier, the Ocean Accident & Guarantee Corporation, Limited, in the sum of $7,446.

In the district court there was judgment in her favor for $4,500, and defendants have appealed.

The record shows that at the spot at which Miss Ransom fell there had been left some water by the scrub woman who had scrubbed or mopped the aisle only a short time before.

Some of the witnesses described the spot as "wet," whereas others referred to it as "damp"; but there is no doubt that it was not in that dry condition in which it should have been and that the wet or damp condition was the cause of Miss Ransom's fall, because there was nothing else shown which could have caused it at that particular spot, and, if the said wetness or dampness was not the cause, then it was indeed an extraordinary coincidence that she had traversed almost the whole length of the aisle in safety and that she fell at that particular point. That there was a wet or damp spot, and that it was at that point that she fell, is conclusively shown.

Referring, for the moment, only to the testimony of defendant's witnesses, we find the following evidence as to the condition of the spot and the location of the fall:

Mr. Frank Kreeger, one of the officials of defendant company, said: "Well, it was wet, but not soaking wet; it was wet enough to notice."

Miss Leingang, an employee of defendant, stated that "the woman was scrubbing and the floor was wet." This witness said also that she had seen plaintiff fall and, when asked the cause, said: "I guess her quick walk that she had and slipping on the wet floor." She was asked: "How large was this wet spot * * *?" And she answered: "* * * I guess that would be about 6½ or 7 feet."

In Miss Feuillan's testimony we find the following: "The lady fell on the wet spot."

Mr. Kreeger testified that it was customary for the scrub woman to "use a washing powder in connection with pine jelly," and, though he stated that the pine jelly is not a lubricant, we feel that, if any of it by chance remained on the floor, in connection with the water it must have made the floor at that point more slippery than it should have been.

In our jurisprudence are found several cases which throw light upon the duties and obligations of storekeepers to those who are invited into their premises to trade. In Grigsby v. Morgan & Lindsey et al. (La. App.) 148 So. 506, 510, the court said:

"It is the duty of a store proprietor to provide safe place for his customers to trade with him. They are tacitly, if not expressly, invited to enter the building and inspect and purchase goods. By the very nature of things he has the right to rely upon the assumption that the entrance to the building and its floor, whereon he must stand or walk, as his needs may require, are safe for such uses on his part. * * *"

In Farrow v. John R. Thompson Co., 18 La. App. 404, 137 So. 604, 605, we said:

"We have been referred to numerous citations of authority bearing upon the question of the responsibility of a storekeeper, or a restaurant proprietor, for injuries due to unusual or defective conditions in the floor of the storehouse or restaurant, and we have no difficulty in finding the law to be that the owner or proprietor of such place must exercise ordinary care and prudence to keep the aisles, passageways, floors, and walks in a reasonably safe condition for his customers who are on the premises by his implied invitation. Thompson Grocery Co. v. Phillips, 22 Colo. App. 428, 125 P. 563; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L. R. A. (N. S.) 464; Langley v. F. W. Woolworth Co., 47 R. I. 165, 131 A. 194; Lawson v. Shreveport Waterworks Co., 111 La. 73, 35 So. 390."

For further discussions, see Huber et ux. v. American Drug Stores, 19 La. App. 430, 140 So. 120; Theodore v. McCrory Co., 17 La. App. 684, 137 So. 352.

We conclude that the defendant did not comply with the obligation imposed upon a storekeeper, and that it was negligence to permit water to remain upon the floor without a barricade around it, or a guard to warn customers of the danger.

But the more important question is the negligence, vel non, of plaintiff herself.

In the syllabus of Hendricks v. Maison Blanche Co., 5 La. App. 410, we said:

"To maintain an action by a customer against the owner of a store for apparent defects in the building two elements must concur, viz.: fault on the part of the master, and ignorance of danger on the part of the customer."

We call attention particularly to the requirement that, in order to recover, the customer must be ignorant of the danger. This is merely another way of saying that a plaintiff cannot recover if injury is caused by failure to see a danger which would have been apparent to a reasonably prudent and observant person.

If the condition of the floor at the spot at which plaintiff fell was obvious to such an extent that a reasonably careful person similarly engaged would have noticed it, then plaintiff was herself negligent in overlooking it and in neither avoiding it nor taking extreme precautions.

Of course, the mere fact that she fell does not of itself show negligence on her part. In Estes v. Ætna Casualty & Surety Co. et al., 157 So. 395, 402, we said:

"We cannot conclude that the fall itself is proof of negligence. * * *"

The aisle was about 4½ feet wide and was well illuminated. The floor was of a light colored wood, and the wet spot was shown to have been somewhat darker than the surrounding floor.

On both sides of the aisle merchandise was displayed at various heights; the object being, of course, to attract the attention of persons in the store, so that they might be tempted to make purchases.

Some of the wares were in showcases and were quite near the floor, whereas others were considerably higher, though it appears that all were below the level of plaintiff's eyes.

It is indeed impossible to formulate any fixed rule by which it may be accurately determined just what such a customer should see and what may be expected to escape reasonable observation.

In Williams v. Liberty Stores, Inc., 148 La. 450, 87 So. 233, recovery was denied to a plaintiff who, because of her failure to notice a box in one of the aisles of the store, tripped over it and fell. But there the court found that the customer had passed the box only a few moments before and that in retraversing the aisle when she tripped over the box she was not inspecting the wares and merchandise on either side of the aisles. It was held that she should have been aware of the presence of the box. Then, too, the fall of Mrs. Williams was not caused by a slippery spot on a level floor, but by an actual obstruction projecting above the level of the floor. There is more likelihood that one will notice an obstruction extending above the level of the floor than there is that one will see a wet or damp spot on the floor itself.

Miss Ransom testified that, although she was on her way to the elevator, which was located in the rear of the building, and was apparently not particularly intent upon looking at the display of merchandise on the side of the aisles, nevertheless she noticed that on both sides there were goods on display and she states that she was "looking at the display." This evidence, which was not, and of course could not be, contradicted, distinguishes fully this case from the Williams Case. in fact, as we have shown, in the Williams Case the court said:

"* * * had the accident happened while plaintiff was engaged in inspecting the wares and merchandise on either side of the aisles, the case would be different."

Canal street, in the neighborhood of defendant's store, is one of the busiest shopping sections of New Orleans. It may be assumed that merchants who are located there will maintain their establishments in a condition which will render it unnecessary for customers to be constantly on the alert for their safety. In such a store it is not negligence for a customer, whose glance is directed towards merchandise on display, to fail to notice such a spot as the evidence shows this one to have been.

Plaintiff's injuries are serious. X-ray photographs are said to show that "the sacroiliac articulations were somewhat widened" and that there was "a fracture of the last segment of the sacrum and the upper end of the coccyx and anterior displacement." Dr. Shirley Lyons testified that when he first saw Miss Ransom she had already been given emergency treatment by another doctor, and that she "was confined to bed with adhesive straps extending from both thighs well down over the buttocks with a pad over the coccyx, the straps extending up into her spine," and that she was confined to her bed and "kept at rest on a firm bed for four or five weeks." He further testified that later he "allowed her up on modified exercises, restricted some of her duties, kept her back strapped," and that even at the time of the trial below (more than nine months after the accident) she was still wearing "a specially made law lumbosacral belt." He further testified that, in spite of all the treatment, she "was having so much discomfort * * * that I had Dr. O'Ferrall see her in consultation * * *."

There is grave probability that an operation will have to be performed. Dr. Lyons' testimony as to the probability of the operation is as follows:

"Examination shows that Miss Ransom is still very sensitive and painful in that region, and on placing your finger in the rectum where you can get a good grip on the coccyx it is movable as though you have what we call a fibrous union, not a true bony union. If that condition persists and Miss Ransom continues to have a great deal of pain after a period of, say, the next six months, I would advise the removal of the coccyx."

There is much evidence as to considerable expense to which plaintiff has been put. Dr. Lyons' bill for services rendered and to be

rendered, exclusive of the possible cost of an operation, is shown to be $400.

We believe that, without attempting to itemize the various expenses, the allowance made of $4,500 is neither inadequate nor excessive.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.

Affirmed.