## CAVICCHI v. GAIETY AMUSEMENT CO., Inc., et al.

### No. 16516.

Court of Appeal of Louisiana. Orleans.
April 5, 1937.

Dufour, St. Paul, Levy & Miceli, of New Orleans, for appellant.

E. Howard McCaleb and Robert Guerard Hughes, both of New Orleans, for appellees.

CHARLES J. RIVET, Judge ad hoc.

Plaintiff alleged that his minor son, aged four years, was injured while a patron of the moving picture theater operated by the Gaiety Amusement Company, Inc.; that the boy tripped or slipped and fell down in an unkept, slippery, dark, and dangerous passageway leading to an open yard; that the toilet provided for male patrons, in compliance with the sanitary regulations of the city and state, was located in a corner of said yard; that rain was blowing into said passageway from the open yard, making said passageway dangerous and unsafe for the patrons who were obliged to use it to go to the lavatory.

Defendants pleaded below that the plaintiff's petition disclosed no cause of action. This exception was overruled by the trial judge. In answer to this appeal they prayed that we correct this alleged error.

It is true that the operator of a theater is not an insurer of the safety of his patrons, but he must be free from any

negligence in connection with the cause of the accident, Givens v. De Soto Bldg. Co. et al., 156 La. 377, 100 So. 534; and the burden is upon him to prove this absence of negligence, Lonatro v. Palace Theatre Company, 5 La.App. 386.

In the last-cited case, which, as its title indicates, involved the liability of a theater operator, we applied the doctrine res ipsa loquitur, and held that: "A presumption of negligence arises from the fact itself of the accident. In such cases the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case." This ruling was approved by the Supreme Court of the state, by the denial of writs of certiorari and review.

We find the holding in the Lonatro Case particularly applicable to the circumstances of the case under consideration.

The plaintiff's petition shows that children of tender years were admitted to the theater, although unaccompanied by a parent or guardian. It would be unreasonable to hold that it was incumbent upon the plaintiff to seek out, allege, and prove the particular and underlying cause of the accident to enable him to recover for the injuries alleged to have occurred while his young son was a patron of the theater.

We agree with the learned trial judge that the petition is sufficient to sustain the action.

In their answer defendants admit that they are, respectively, the operator of the theater and the operator's insurer against public liability; that on January 14, 1936, at about 7 p. m., plaintiff's son and another boy were admitted to the theater; that the only toilet for male patrons, maintained in compliance with the sanitary regulations of the city and state, is located at one of the four corners of an open yard, accessible only through a passageway to the right of the projection screen. The remaining allegations of the petition are denied.

We must determine by an examination of the evidence whether the accident occurred while the plaintiff's infant son was a patron of the theater; and, if so, whether the operator has established an absence of negligence.

On the first point the record shows that the plaintiff's son attended the theater "very often," and was known to the cashier, who remembered having admitted him and his companion, another boy aged about fourteen years, on the night of January 14, 1936. Later in the evening, after the accident, another of the employees of the theater heard the child crying "and told the little boy the child was with, that if the child kept on crying he would have to take him into the lobby or dressing room, as he was disturbing the people." The child's companion testified that after the accident the little boy was screaming; upon inquiry he told one of the employees that the child had broken his leg or sprained it; and he was asked to "take the kid out of the show because he is disturbing everybody"; that he took him to a drugstore across the street, where he was informed that the leg was broken. The child was thence conveyed to the Charity Hospital in an ambulance. This evidence satisfactorily establishes that the child met with the accident while attending the theater as a patron, and that its agents had ample opportunity to acquaint themselves with the circumstances if they so desired.

The only explanation of the accident is that given by the injured boy's companion. He relates that some time after being seated and while the picture was in progress, his small companion expressed the desire to go to the toilet. He left his seat, took the little boy by the hand, proceeded slowly along the wall to the passageway, pushed aside the curtain that hung over it, and when about a foot and a half inside, the little boy, whom he was then holding by the finger, slipped and fell. He states, further, that there was no light in the passageway, but one over the toilet in the yard, which reflected dimly because the night was rainy; that the floor of the passageway was wet, as he knows from his own arm having gotten wet when he picked up the little boy, who was screaming and lying on his back on the floor.

The evidence is conflicting as to the adequacy of the light in the passageway, but we do not consider this as important. It is not suggested that the boy stumbled over an obstruction. If he had, he would have fallen forward. The total absence of light could not account for the slipping of this child, nearly four years old, fairly well nourished and developed, as this record shows him to have been on both occasions that he was examined. We must look elsewhere for the cause of the fall.

If the floor was wet the accident could as well have happened in a brilliantly lighted vestibule as in a dark one.

The record offers no other plausible explanation of the child's fall than that he slipped on the wet floor. There is ample evidence to account for the floor being wet. The passageway in which the boy slipped leads to the courtyard by means of a five-foot double door located on the right at about four or five feet from the curtain. This door is allowed to remain open, and there is no adequate protection to prevent rain from entering. Defendants' witnesses concede that when it rains the passageway gets wet, some say directly by the rain, others from people walking in and out. One of the defendants' witnesses, when asked if he denied the statement of the child's companion that the passageway was wet, replied: "I know it gets wet."

According to the weather report for the month of January, 1936, filed in evidence, and to the testimony of the witnesses, it was drizzling on the night of the accident. Between 4 and 5 p. m., .14 inches of rain was measured, with traces of rain until 6 p. m. Between 8 and 9 p. m. traces of rain were again noted by the weather observer. The accident occurred shortly after eight.

On these facts the able judge of the district court gave judgment for the defendants, upon the view that no human precedent, no human expectation, and nothing in human experience, could suggest any one being hurt by dampness on the floor of the passageway.

We cannot agree with these views. One of the defendants' witnesses testified that if the floor had been wet he would have mopped it; he would not say that it was dry; would only admit that it was damp from footprints. Even this witness recognized that a wet floor constitutes a hazard.

■ The operator of a theater is required by law to furnish certain sanitary conveniences for the physical comfort of his patrons. These must be made accessible to all classes, both young and old. When he caters to extremely young children, the degree of care which he must exercise naturally increases.

■ We are of the opinion that it was negligence to allow a large doorway, leading to an open courtyard, to remain open on a rainy night; that there is nothing contrary to human experience in a child of tender years slipping on a wet or damp floor; that such contingency should have been foreseen and could have been prevented with proper care.

In Ransom v. Kreeger Store, Inc., et al., 158 So. 600, where a grown person slipped and fell on a wet floor which had been recently scrubbed or mopped, we held that the storekeeper had failed in its duty to provide a safe place for its customers to trade, and that it was negligence to permit water to remain upon the floor without a barricade around it or a guard to warn customers of the danger.

We can perceive no reason why the doctrine of that case does not apply here with equal, or greater, force. In the cited case the hazard was caused by a scrub woman allowing water to remain on the floor; in the instant case the danger arose from permitting rain to enter a dark or dimly lighted vestibule through an open doorway, or by not providing mats for wiping the shoes of patrons going in and out. In either case there was a failure to make safe a passageway which customers or patrons were expected to use.

The injured boy was confined in the Charity Hospital for approximately two months. On admission he was found to have suffered a fracture of the middle third of the left thigh bone which caused him much evident pain. A cast was applied with overhead adhesive traction. After about a month of confinement, two abscesses, which had formed, respectively, on his left and right buttocks, had to be incised under local anesthesia. He was discharged on March 16, 1936. On June 18, 1936, he was thoroughly examined by Dr. Stone, on behalf of the defendants. By measurement, the doctor found a shortening in the left leg of one-quarter of an inch, which he stated caused no limp, and, he believed, would cause none later. The only evidence of suffering is that of the pain before the setting of the fracture. There is no proof of permanent injury.

Defendants have suggested that in the event we found them liable, an award of $500 would be ample. Plaintiff originally prayed for $6,000, but in his last supplemental brief suggests that Dillon v. New Orleans Public Service, Inc., 170 So. 406, in which we affirmed a jury's verdict of $3,460 to a young woman who suffered a serious fracture of the tibia and fibula,

furnishes a measure of the award we should make.

■ Although there is no fixed standard of amount allowed for physical damages, there must be some reasonable uniformity in awards.

In Polizzi v. Louisiana Ry. & Nav. Co., 14 La.App. 442, 131 So. 611, we affirmed a jury's verdict of $1,500 to a four year old boy who suffered a lacerated wound of the eyelid and the bridge of his nose, which necessitated suturing; a compound fracture of both bones of the left leg; bruises and contusions all over the body.

In Robichaux v. Dorion, 17 La.App. 159, 134 So. 784, we affirmed an award of $1,000 to a man where both bones of his left leg were broken, disabling him for about four months.

In Blahut v. McCahil (La.App.) 163 So. 195, our brothers of the First Circuit allowed $500 to a young man who suffered a broken leg and broken ribs, and who was confined in the Charity Hospital for two months.

■ The injured child in the instant case suffered only a simple fracture, with no complications and no evidence of any permanent ill effects. We have concluded that an award of $500 will amply compensate him.

The judgment appealed from is avoided and reversed, and it is now ordered, adjudged, and decreed that the defendants Gaiety Amusement Company, Inc., and Sun Indemnity Company, be condemned, in solido, to pay to the plaintiff Mario Cavicchi, for the use and benefit of his minor son, Mario Cavicchi, Jr., the full sum of $500, with legal interest thereon from judicial demand until paid, and all costs.

Reversed.

JANVIER, Judge (dissenting).

The distinction between this case and Ransom v. Kreeger Store, Inc. (La.App.) 158 So. 600, is that here the water, which, it is charged, should not have been permitted to remain on the floor, was immediately adjacent to an exit of the theater. Counsel for plaintiff in their briefs recognize the distinction between such a condition near an entrance or an exit and such a condition entirely within the premises.

It is conceded that a theater owner is not an insurer of the safety of his patrons and, while it is true that, in Lonatro v. Palace Theatre Co., 5 La.App. 386, we said that the doctrine of res ipsa loquitur applies where a patron is injured in a theater, I feel quite sure that the reason which prompted the court to apply the doctrine there was that, under the particular facts, the patron could certainly have had no knowledge as to the cause of the injury. Ordinarily it is well established that the owner and operator of a theater is not the guarantor of the safety of his patrons and is not under the necessity of explaining all accidents which may occur regardless of the circumstances.

In 62 Corpus Juris, verbum, Theaters and Shows, § 80, the rule is stated as follows:

"Evidence—a. Presumptions and Burden of Proof.—(1) In General. In actions for injuries sustained by a patron of a theater or other place of public amusement, negligence of defendant is not presumed, and the burden of proof is not on defendant to show that he was not negligent, but on plaintiff to show that defendant was negligent, by a fair preponderance of evidence."

It is only where the circumstances are peculiar and the accident is caused by an instrumentality entirely under the control of defendant, or under circumstances concerning which the injured party could obviously have no knowledge, that the doctrine of res ipsa loquitur is sometimes permitted to apply. See 67 C.J. § 81, p. 879.

The facts of the Lonatro Case were most peculiar and, obviously, the patron could have had no knowledge as to how the accident had occurred, whereas here it is obvious that the accident occurred because the patron slipped on the floor and knowledge as to circumstances of that kind could as well have been obtained by the plaintiff as by the defendant since, even though the injured boy was quite young, he was accompanied by an older boy.

The fact that such an accident had never before happened may be taken into consideration in determining whether it was negligence in the operator of the theater to permit a certain amount of water to remain near the door at the exit.

In Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534, 536, the Supreme Court said:

"The question therefore is whether it was negligence on the part of the Saenger

Company to fail to *light the floor* at the point where the change of level occurred. We do not think so.

"It is shown that many thousands of persons have entered and left this theater without another person having suffered a fall. Things were therefore apparently safe.

"Now the operator of a theater is not an *insurer* of his patrons. He need only be free from negligence; and, granting that a prudent man must exercise some degree of foresight, nevertheless he is not required to foresee that something may happen, when long experience fails to show any such happening before, unless the circumstances are such that he should have known that the happening was likely even though it had not yet occurred.

"But such is not the case here. Moving pictures, as we have said, require some degree of darkness; nevertheless such theaters are never so dark that one may not see persons and objects around him, which become quite distinct after a while spent in the semidarkness."

There was no reason to anticipate danger in the particular place in which this little boy fell. The floor was perfectly level; there was no obstruction of any kind; the evidence shows that there was a certain amount of illumination from the light located across the yard.

That the doors were left open is of no importance because, obviously, if they had been kept closed except when in use, a certain amount of water and possibly mud would have been tracked in from the outside.

I respectfully dissent.