## DALFERES v. ILLINOIS CENT. R. CO.

### No. 16794.

Court of Appeal of Louisiana. Orleans.

Dec. 12, 1938.

Carroll, McCall, Plough & Carroll, of New Orleans, for appellant.

Lemle, Moreno & Lemle, of New Orleans, for appellee.

McCALEB, Judge.

Frank J. Dalferes has prosecuted this appeal from a judgment dismissing his suit against the Illinois Central Railroad Company wherein he seeks to recover damages for the personal injuries he sustained on November 17, 1934, when his Nash Sedan automobile collided with a box car of the defendant.

The accident occurred shortly after eight o'clock p. m. on a clear night at the intersection of Poydras and Galvez Streets in the City of New Orleans. Galvez St. crosses Poydras St. at right angles and is a wide thoroughfare divided by a neutral ground with a paved roadway on each side thereof. Its lakeside roadway is devoted to use by traffic proceeding from downtown towards uptown and on the riverside roadway vehicles travel in the opposite direction. Poydras St., which is somewhat wider than Galvez St., runs from the Mississippi River towards Lake Pontchartrain. The roadways of this thoroughfare are separated by a large neutral ground which is occupied by seven railroad tracks. At the time of the accident, the lower roadway of Poydras St., running from Claiborne Ave. in the direction of Lake Pontchartrain, was not paved, whereas the upper roadway, primarily devoted to traffic proceeding towards the Mississippi River, was paved and, by reason of the fact that the lower roadway was not in suitable condition for the passage of automobiles, traffic was permitted to travel on the upper roadway in either direction. In other words, the automobile traffic traversing Poydras St. within the vicinity of the Galvez St. intersection used the upper side roadway of that street when proceeding either in or from the direction of the Mississippi River.

The neutral ground of Poydras St., on which the seven railroad tracks heretofore mentioned are situated, is and has been used by railroads operating within the limits of the City of New Orleans, particularly the defendant company, for switching operations of freight trains and the plaintiff was familiar with the fact that these trains pass over the Galvez St. intersection from time to time. At the time of the accident, the defendant was backing a "cut", consisting of three cars and an engine, over the riverside intersection of Galvez St. in the direction of Lake Pontchartrain. While it was thus engaged, the plaintiff's automobile, which was being operated on Galvez St. over the Poydras St. crossing in the direction of Canal St., ran into the rear or "lead" box car of the train just as the latter was being slowly pushed over the intersection.

Plaintiff contends that the accident was due to the negligence of the railroad company in that it permitted the box car to be backed into the intersection without any warning; that there were no lights upon it and that, due to the other surrounding circumstances, he was unable to discover its presence until he was so close to it that he was unable, by the application of his brakes, to avert the collision.

On the other hand, the railroad company asserts that the accident was caused solely through the lack of care on the part of the plaintiff who, it is charged, was operating his automobile at a high rate of speed and without having it under control. It further denies that the plaintiff was not warned that the box car was being backed over the roadway, maintaining that, as a matter of fact, one of its employees was stationed at the intersection with a signal light and that this employee cautioned the plaintiff not to proceed. It further claims that, despite the signal given by its employee, the plaintiff heedlessly drove over the intersection at a fast rate of speed and crashed into its box car.

It will be seen from the statement of the case that the theories advanced by the respective contestants, with regard to the manner in which the accident occurred, are in direct contrast.

Plaintiff's version of the occurrence is as follows: He and two friends, a Mr. Taylor and a Mr. Huber, previous to the accident, had been in the uptown section of New Orleans visiting a Mr. Nebel. Upon leaving Mr. Nebel's home, which is situated some miles from the point of the accident, he, accompanied by Mr. Taylor and Mr. Huber, proceeded towards downtown in his automobile at a speed of approximately 15 to 20 miles per hour. Upon reaching the intersection of South Claiborne Ave. and

the New Basin Canal, he turned into the road abutting the Canal and traveled over that road until he reached Galvez St. At Galvez St., he crossed the bridge over the New Basin Canal and proceeded upon the riverside roadway of Galvez St. in the direction of Canal St. He further states that, when he arrived at the intersection of Galvez and Poydras Sts., he slowed down the speed of his car to about four or five miles per hour and, after noticing that the Poydras St. crossing was clear of vehicles and trains, he proceeded across the intersection. When he had negotiated the upper roadway of Poydras St., he accelerated the speed of his car to approximately eight or ten miles per hour and began to traverse the railroad tracks. When he arrived at a point about six feet from defendant's track No. 4 (which is the fourth railroad track over which he had to pass), he observed for the first time the presence of the box car being backed over the crossing on that track and, being thus suddenly confronted with an emergency, he immediately applied his brakes and swerved to the left in an unavailing effort to avoid a collision. He further proclaims that there was no light upon the box car; that no previous warning of its presence had been given to him by the employees of the railroad and that, because of its dark color and the inadequacy of the street lights on the corners of the uptown intersection near the scene, he was unable to see it in sufficient time to avert the impact.

The only other eye-witness to the accident produced by the plaintiff was one Robert D. Taylor who occupied the rear seat of his automobile. This witness does not support the plaintiff's testimony. On the contrary, he stated that the plaintiff ran over the intersection at a speed of about 15 to 20 miles per hour without stopping or slowing down at the corner of Poydras St. and that, from his position in the rear seat of the automobile, he saw the train being backed over the intersection at the time the automobile reached the first railroad track on the uptown side of the neutral ground, which (as shown by a blueprint admitted in evidence) is approximately 41 feet from the point of the impact. He further declares that when he saw the train, he yelled to the plaintiff to stop but that the latter failed to heed his admonition and, proceeding on without slowing down, crashed into the side of the box car with such violent force that, as a result, Huber (the passenger in the front seat of the car)

was killed and the plaintiff was injured. Taylor does, however, assert that he did not see a flagman stationed at the crossing to warn on-coming traffic of the presence of the train and, to that extent, his testimony is corroborative of plaintiff's statement.

On the other hand, the defendant's evidence portrays an entirely different picture of the collision. Its employees Negrotto, Thompson, Frederic and Landry, all verify that the plaintiff came over the crossing (at a speed variously estimated by them at between 30 to 45 miles per hour) without stopping, looking or listening. They also positively state that the defendant's employee Landry was stationed in the riverside intersection of Galvez St. waiving a lantern as a signal to on-coming traffic that the train was being backed across the intersection. They further assert that the plaintiff, driving his car at a fast rate of speed, entered the intersection of Poydras St. without slowing down and proceeded across the street and railroad tracks without heeding the warning signal of Landry and that the latter was compelled to jump out of the way of the automobile in order to avoid being struck by it.

Our Brother below, after hearing the witnesses and observing their demeanor on the stand, was of the opinion that the evidence submitted by the defendant should prevail and, in his written reasons for judgment, he remarked:

"The defendant's employees all testify that they were in their proper positions, with lanterns, and that there was a watchman with a lantern immediately in the crossing. As the work of these employees was a matter of routine, I have no reason to believe that they were not there. Believing this, it is difficult for me to understand how plaintiff proceeded to drive his automobile into the front end of this moving freight car."

■ A careful scrutiny of the record has failed to disclose any error in the conclusion reached by the court. On the contrary, the evidence, when considered in the light of the surrounding circumstances, convinces us of the verity of the defense and that, had the plaintiff exercised any degree of caution whatsoever, the accident would not have occurred.

■ Plaintiff's counsel nevertheless say that, since it is undisputed that the defend-

ant backed its freight train along Poydras St. and across Galvez St. without having the box car lighted, this in itself was gross negligence when it is considered that the switching operations were being performed over an important thoroughfare in the heart of a large city. In support of this proposition, the cases of Aymond v. Western Union Telegraph Co. and Texas & Pacific R. R. Co., 151 La. 184, 91 So. 671; Kraemer v. Louisville & Nashville Ry. Co., 144 La. 57, 80 So. 198; Hampton v. Louisiana & N. W. Ry. Co., 2 La.App. 171, and Maher v. Louisiana Railway & Nav. Co., 145 La. 733, 82 So. 872, are cited.

The point is not well taken. In all of the cited cases in support of the contention, it appeared that the crossing was unguarded and poorly lighted and that the defendant failed to warn the public of the presence of the train by having a watchman with a suitable lantern at or near the crossing. Here the evidence shows that the defendant had a lookout present and that he warned the plaintiff (without success) that the crossing was occupied by the box car.

The case of Polizzi et al. v. Louisiana Ry. & Nav. Co., 14 La.App. 442, 131 So. 611. Also relied upon by the plaintiff, is likewise inapplicable to the case at bar. There, it was found that the flagman did not arrive at his station in time to enable him to give proper and adequate warning of the approach of the train to the persons who were attempting to cross the railroad tracks, whereas, here, we are convinced from the evidence that the defendant's employee Landry was in his proper position at the time the plaintiff attempted to negotiate the crossing.

Plaintiff's counsel also contend that the lighting conditions at or near the scene of the accident were not what they should have been in that there were only two street lights on the uptown corners of Poydras St. whereas there were none on the downtown corners. It cannot be denied that, if the municipal authorities had installed more street lights within the vicinity, a brighter view of the crossing would be obtained. But we fail to see how this fact had anything whatsoever to do with the accident since the defendant had a flagman stationed at the crossing waiving a white light in plain view of the plaintiff at the time he approached and, if he had paid the slightest bit of attention, he would have been bound to notice that the intersection was occupied by the train.

•For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.