60 So.2d 108 (1952)
SAVOY
v.
G. F. POOLE MORTUARY, Inc. et al.
No. 3566.
Court of Appeal of Louisiana, First Circuit.
June 30, 1952.
*109 Watts & Rich, Franklinton, for appellant.
Richardson & Richardson, Bogalusa, for appellees.
LOTTINGER, Judge.
This is a suit by Eva Savoy against the G. F. Poole Mortuary, Inc., and its insurer, the Ætna Casualty and Surety Company. Exceptions of no cause of action and of vagueness were filed by the defendant, and were overruled by the court below. Answer was then filed by defendant, and, upon trial on the merits, judgment was rendered in favor of defendant. Petitioner takes this appeal.
The G. F. Poole Mortuary, Inc., is an undertaking establishment located in the City of Bogalusa, and generally engages in the business of embalming the dead and conducting funerals. In connection with its business, wakes are held in order to allow relatives and friends to view their dead. On the night of January 18, 1949, such a wake was being held over the body of a Mrs. Higgenbottom. Mrs. Eva Savoy, the petitioner and her husband were in attendance at said wake. Mr. Savoy departed the funeral home at about 8:00 p. m. and proceeded to his car parked in front of the funeral home to await the petitioner, Mrs. Savoy, who remained inside the funeral home. Mrs. Savoy departed at about 8:30 p. m. and claims that she proceeded toward the car, in which her husband was waiting, via a private concrete walkway leading from the funeral home to Alabama Avenue, the street which runs in front of the funeral home. While still on the private walkway and at a distance of about twenty feet from the street, Mrs. Savoy claims that she fell because of a defect in the walkway. Said defect was an alleged drop of two inches in the walkway. Petitioner alleges that she, being unaware of the sudden drop, pitched forward in attempting to negotiate said area, turned ankle and fell down with great force on her posterior. Petitioner claims that, as a result of said fall, she suffered injuries consisting of a broken bone at the tip of her spine in the region of her posterior, a sacroilliac sprain, and a sprained ankle. She seeks damages in the sum of $15,000 for pain and suffering and permanent disability.
The only witnesses to the fall were petitioner, her husband, and a friend who was in the car talking to Mr. Savoy. Although Mr. Savoy and the friend did not see Mrs. Savoy fall, they testified that they saw some one getting up from the ground, and as the unidentified person approached toward the car, they recognized her as Mrs. Savoy. Defendant denies that Mrs. Savoy fell, and that she had attended the wake on that particular night, but alleged in the alternative, that if she did so, she entered the premises as a mere licensee and at her own risk. They further answer in the alternative that, should any negligence be found on the part of the defendant, that the sole proximate cause of said accident was the contributory negligence of petitioner.
On trial of the matter, it was shown that some slight defect did exist in the private walkway, which was owned and maintained by the defendant. The private walkway connects the front of the funeral home with the public sidewalk along Alabama Avenue in Bogalusa. The private walkway consists of a number of concrete slabs three feet in width and three feet long, placed end to end. As is the custom, small expansion joints separate the slabs so as to allow for expansion and contraction. The walkway was well constructed and was in good condition as any in the neighborhood. *110 At a distance of approximately thirty-three feet from Alabama Avenue, there is a slight rise in one end of one of the slabs. Said rise is on the end of the slab toward the funeral home, and is a rise of about ¾ inch. In other words, at this particular spot, a person approaching the funeral home would face a ¾ inch drop, whereas a person coming from the funeral home would face a ¾ inch rise. According to a drawing of the profile of the walkway made by E. J. Champagne, Civil Engineer, who testified below, and which profile was introduced into evidence, the other end of this particular slab was level with the remainder of the walkway.
There is no question but that this particular walkway was owned and maintained by defendant. We feel further that there is no question but that there was a slight rise in the walkway in proceeding from the funeral home to Alabama Avenue. This rise is one of ¾ inch. Thus the petitioner could not have fallen because of a depression in the sidewalk, as she alleged. The only obstruction facing petitioner as she left the funeral home was the ¾ inch rise in the walkway, and we believe that this obstruction, if anything, would have caused petitioner to stumble forward, and, in so doing, petitioner would hardly have fallen on her posterior as she claims.
Dr. Desporte, petitioner's own witness, testified most unfavorably to petitioner's cause. He stated, on trial, that he had treated Mrs. Savoy for several years. He stated that he treated her on January 20, 1949, only two days after the alleged fall. At that time, the doctor's record contains no mention of petitioner having told him of her fall, and the doctor stated that it was his practice to note such statements by his clients in his medical records. The doctor further testified he examined petitioner and found her to have a very mobile coccyx bone, which is indicative of an old fracture or dislocation of that bone. The doctor stated that the said fracture or dislocation had existed for some time prior to January 18, the date of the alleged fall. The doctor stated that childbirth was the most frequent cause of such injury to women, and it was shown that Mrs. Savoy had given birth to three children prior to the alleged accident. The examination of January 20, revealed no pain, swelling, or bruises on the body of Mrs. Savoy. The doctor testified that, had the fall of January 18 caused the fracture or dislocation, there would have been some evidence of pain, swelling or bruises on January 20. From the testimony of Dr. Desporte, it was conclusively shown that the dislocation or sprain of the coccyx bone occurred prior to the night of January 18. Dr. Desporte further stated that Mrs. Savoy did not mention the alleged fall to him until about six months after the alleged fall.
The defense introduced testimony that they were not informed of the alleged fall by Mrs. Savoy until some nine months thereafter. This evidence was not contradicted by petitioner. It seems strange to us, as it did to the lower court, that a person suffering a fall which resulted in injuries causing such excruciating pain, as petitioner claims, would have neglected to inform the guilty party until nine months thereafter.
The lower court found that visitors to funeral homes for the purpose of attending wakes are invitees rather than licensees. This conclusion was based upon the holdings of Bell v. Houston & S. R. Co., 132 La. 88, 60 So. 1029, 43 L.R.A.,N.S., 740; and Mills v. Heidingsfield, La.App., 192 So. 786. Each of said cases held that an invitation to enter upon or use premises may be express or implied, and an invitation may be implied when the owner or occupant engages in some business which fairly indicates to the person entering the premises that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant. Under the holdings of these cases, we are of the opinion that visitors to a funeral home for the purpose of attending a wake of a relative or friend are invitees, and not licensees.
It is well settled that an owner or occupant of premises owes an invitee the duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the premises. It was shown by the defense that some 12,000 persons had visited the funeral home during the year prior to the *111 alleged fall of Mrs. Savoy. No complaints had been made to defendant as to the condition of the walkway, nor had any one fallen on the walkway. We do not believe the ¾ inch rise to be such a defect as would make defendant liable for an alleged fall by petitioner, if there was such a fall. It is not the duty of a proprietor to keep his premises in a perfect condition for his customer, he need only keep the premises in a reasonably safe condition. Bartell v. Serio, La.App., 180 So. 460; Battles v. Wellan, La.App., 195 So. 663; Riche v. Thompson, La.App., 6 So.2d 566.
Petitioner alleges that it had been raining on the night of the alleged fall, and that the slight depression in the walkway was covered with water. We believe this contention to be without merit. It was conclusively shown that the defect was a rise in the walkway, not a depression. It was further shown that, although there had been some rain on that particular night, the walkway was some three inches higher than the lawn, and the area was well drained. Had it been raining, as was claimed, the duty was more incumbent upon petitioner to exercise a greater degree of caution in traversing the walkway.
Petitioner further alleges negligence on the part of defendant because the walkway was not sufficiently lighted. The evidence shows that there was a light attached on the outside on the front of the building. There was also a street light on Alabama Avenue. Defendant claims that no one has ever complained that the walkway was insufficiently lighted. It was testified by Mr. Savoy that he saw Mrs. Savoy on the ground, at a distance of some thirty feet. Had the lighting been as poor as petitioner claims, it does not appear that her husband could have seen her at such a distance on a dark and dreary night.
We believe that the petitioner has failed to prove her case. In the first place, we do not believe that a rise of ¾ inches in a concrete slab is such a defect as would make defendant liable in damages to his visitors who might fall because of such a defect. It was shown that this particular walkway was well constructed, and was in as good condition as any other in the neighborhood. Furthermore, petitioner's husband testified that upon her entry into the automobile he asked whether she was hurt. Her answer, according to her husband, was "she did not think so." Had petitioner just suffered a skinned hand, a sprained ankle, and a hurt back, as is now claimed, we feel that she would have informed her husband thereof, and would have had some difficulty in getting up and proceeding on. Her own doctor testified that he examined petitioner two days after the alleged accident, and that he found no evidence of any recent injuries, nor did petitioner, at that time, complain of any. Defendant showed, without contradiction, that no mention of the alleged fall was made to them until some nine months after the alleged fall.
Although it is entirely possible that the petitioner did slip and fall on the night she alleges, we do not believe that the cause of the fall was the ¾ inch rise in the sidewalk. Said rise would tend to cause her to fall forward, and not backward as she contends. Furthermore, petitioner has failed completely to show that the fall caused the injuries complained of.
For the reasons assigned, the judgment of the lower court is affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.