89 So.2d 475 (1956)
Miss Ruth MEYERER
v.
S. H. KRESS and CO. et al.
No. 4249.
Court of Appeal of Louisiana, First Circuit.
June 29, 1956.
Rehearing Denied September 24, 1956.
*476 Landry & Landry, Ashton L. Stewart, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
LOTTINGER, Judge.
This action is before us on an appeal taken by the plaintiff from a judgment of the Lower Court dismissing her suit.
The petition alleges that on April 26, 1954, the petitioner, while shopping in the store of the defendant and while walking down an aisle adjoining a lunch and soft drink counter, slipped on a "wet, oily or slick spot on the floor" and fell suffering physical injuries for which damages are claimed in the amount of $18,243.13. The answer is in the form of a general denial, the defendants alleging that the accident was caused by the negligence of the plaintiff and, alternatively, that the latter was guilty of contributory negligence which is a bar to her recovery.
The plaintiff testified that the accident occurred between 9:30 and 10:00 o'clock A.M. on April 26, 1954. She stated that she and her sister were walking together and that "some particle was on the floor that I caught my right foot in this particle, slipped and in trying to catch myself, I could see myself going like this in the air, turned completely around, was sitting down and facing like I come into Main Street." She was wearing "Florsheim's Walk-Heels with rubber heels." After the accident she saw what she described as "a black looking round mark that my foot had skidded in and left around a 12 inch * * * mark on the floor." The witness did not feel this mark but described it as being "wet, oily or greasy."
On cross examination, the plaintiff further described the mark as being black, about 10 or 12 inches in length, and about as wide as a finger, running parallel to the aisle. She stated further that this mark was a skid mark which was made by her foot and that she did not observe any other mark or spot. She admitted that she did not examine the floor and was not in a position to comment either upon its general appearance or upon whether or not there was food or other debris on it.
The plaintiff's elder sister, Miss Bertha Meyerer, testified on the latter's behalf. This witness testified that she did not see the plaintiff fall as she had momentarily turned around to look at the counter to her right. She stated that after the fall she saw a black spot on the floor which was greasy and dark looking and about 12 or 18 inches in length. This witness stated that after the accident her sister's dress had spots on it and that her stockings looked black and greasy. On cross examination she stated that she did not observe anything else on the floor and that she did not feel the spot which she did see on the *477 floor. She admitted that she was unable to testify positively that her sister's foot made the mark which she did observe.
One Owen J. Lange, Jr., a post office employee, was called upon to testify on behalf of the plaintiff. He stated that he, James Jackson and Willie Bastin stopped in the defendant's store to have coffee. He did not actually see the plaintiff fall but saw her on the floor immediately after she fell, at which time he went immediately to her. He stated that he observed a spot near the plaintiff's heel and a skid mark running through it. This spot he described as being round but said he had no idea as to its size. On cross examination Lange repeated that he did not know the size of the spot. He stated that there was a skid mark which was lighter in color, which was longer than the spot and which ran through it. He did not estimate the distance from the plaintiff's foot to the spot, and stated that he did not touch the spot and did not know what it consisted of. Generally speaking, the testimony of this witness on the trial was the same as that contained in his deposition, except that in the deposition he estimated the spot as being about the size of a nickel.
James B. Jackson, another postal employee, testified that he knew the plaintiff and happened to see her when she was on the floor. He stated that there was a spot on the floor near where she was sitting but that he did not feel the spot and did not know what kind of spot it was. He also stated that he observed what he thought to be a skid mark and that the spot and skid mark were near each other. On cross examination he said that he did not pay close enough attention to the marks to be able to state whether the skid mark was darker than the spot or vice versa. He did not estimate the size of either the spot or the skid mark.
The plaintiff called one Rosa Jones on cross examination. This witness was employed at the time of the accident as a waitress behind the colored lunch counter. She heard the plaintiff fall and stated that she was about four feet beyond the entrance to the lunch counter. When called on direct examination on behalf of defendants, this witness stated that she looked at the floor to see whether there was anything on it and found nothing. She emphatically stated that when such a situation arose, it was part of her duty to see if there was anything on the floor and that she examined same and was unable to find any marks or where anything had been dropped or spilled.
The plaintiff called also on cross examination one James C. Weatherby. This person was employed by Kress as a bonded stock man who was in control of all porters and other persons whose duties it was to clean the floors. He described in detail the complete process of caring for the floors and explained the application of a compound known as Myco-Sheen. He stated that he had no records which would show whether or not Myco-Sheen had been applied on the Saturday previous to the Monday on which the accident occurred. He stated that when Myco-Sheen was applied, the work was done on Saturday, and that if any spots remained they were completely dried up by the following Monday morning.
Another of the defendants' employees, Sam Jenkins, was called on cross examination and stated that he was the porter who applied the Myco-Sheen, and that it was applied approximately once a month.
One Leon Baker, a bus-boy, called on cross examination, stated that on occasion he had seen food stuff on the floor. He stated further that when something is dropped or spilled on the floor, that it was mopped up and left dry and clean and that they tried to keep it that way.
Miss Delta Mary Blanchard, Floor Supervisor for Kress, was called upon cross examination and testified that while she did not see the plaintiff fall she heard her fall and went to her. She stated that she did not remember the position of the plaintiff *478 or the exact type of shoes she had on, but testified that she "looked over all the floor and didn't see anything." She further testified that there was a little skid mark about two inches in length near the plaintiff but that such marks were to be found throughout the store and could be caused by baskets which were dragged over the floor.
When placed on the stand by the defendant on direct examination, Miss Blanchard testified in detail with respect to the procedure followed by the employees of Kress when somthing is dropped or spilled on the floor of the store. According to her testimony, it is the practice for any employee to pick up small trash himself or to call for a porter and meanwhile to "stand guard," that is, to stand right where the spilled object is. She repeated that right after the accident she did see a small skid mark near the plaintiff but that she did not see any spots or greasy substance. She further stated that after the plaintiff left no mopping or cleaning up was done in the area because there was nothing to clean. She described the floor's general condition as being clean and attributed this largely to the fact that it was early and not too many people had entered the store at the time.
On cross examination she repeated that there are skid marks on all the floors of Kress caused from dragging baskets and that one can see marks in every aisle.
Also called on cross examination by the plaintiff was Mrs. Mary Senac, who was in charge of the lunch counters, both white and colored. She testified with respect to the practices and procedures followed by the employees behind the lunch counters. On direct examination she substantiated the testimony of Miss Blanchard with respect to the procedure followed by the employees of Kress when something was dropped or spilled on the floor. She testified that she had not seen the plaintiff fall but went to her as soon as she learned of the accident. She stated definitely that upon arriving on the scene she "looked to see if there could be anything that caused anybody to fall and I went down and touched the floor around the area to see if it was damp and I also took my shoe and rubbed it on the floor to see if there was anything that might have been slippery and I did not detect anything there." This witness stated that there had been no reason for anyone falling in that area of the store and that she did not see any spot, skidmark, water or grease in the vicinity of the place where the plaintiff fell.
A Miss Hilda Theriot, an employee of Kress for twenty-nine years and personnel manager at the time of the accident, was called by the defendants. This lady stated that she was called to the scene of the accident and checked the floor to see if she could ascertain the cause of plaintiff's fall. She testified that she did not find anything out of the ordinary on the floor and was positive in stating that she did not see any spot or discoloration or anything wet or greasy in spite of a careful search. The report which was made on information supplied by this witness was introduced in evidence and stated that there was no foreign matter on the floor. On cross examination this witness repeated that she saw no skidmark near the plaintiff after the accident.
One L. C. Rhames, Assistant Manager of the Kress Store at the time of the accident, testified that he went to the scene of the accident and checked the floor in the vicinity. He stated that he rubbed the floor with his shoe, even getting down on his knees and checking it closely, and that he was unable to find any foreign matter, spot or skid mark.
The defendants introduced the testimony of one B. D. Coley, an employee of the Masury-Young Company, the producers of Myco-Sheen. This witness testified at length as to the composition and properties of the product, stating that it is composed of solvent, gum and rosin. The solvent, he stated, acts as a cleanser and penetrating agent, the rosin as a preservative and the gum to give the floor more traction. He *479 stated that Myco-Sheen is widely used by national companies and that it costs $1.96 per gallon. Acccording to this witness, inspections are made of the companies using the product every ninety days and he had inspected this Kress Store roughly every ninety days for the past seven years. Introduced into evidence were photostatic copies of reports made on the store in question, the latest of which was dated April 19, 1954 and showed the floors to be clean and in good condition.
In rebuttal the plaintiff introduced the testimony of one Lillian Byars who testified that she slipped on the floor in the Kress store in March, 1954, and that the cause of her fall was either wax or grease.
The deposition of Mr. Leland P. De Pue, introduced as plaintiff Exhibit 8, reveals that this man was the manager of the Kress company in Baton Rouge since March 1, 1954. He stated that from that date until June 3, 1955, there had been five "slipping" cases in the store.
The trial judge in his oral reasons for judgment stated that he personally felt the mops which had been saturated with Myco-Sheen and that the latter did not feel like oil or grease, but, on the contrary, was easily wiped off leaving the fingers dry with a slight roughness. The trial judge went on to state that while his sympathies were with the plaintiff, he was unable to find from the evidence introduced any proof as to the cause of the accident or any showing of negligence on the part of the employees of Kress.
With the trial judge's findings, we are in complete accord. An award to the plaintiff could only be justified on an assumption by us that some substance was on the floor which caused her to slip. The evidence fails to reveal that in fact any such substance was present and for us to assume from the mere fact that she fell that one was present, would be improper and unwarranted.
The jurisprudence of this state with reference to slip-down cases was thoroughly reviewed by the Second Circuit Court of Appeal of this state in the case of Peters v. Great Atlantic & Pacific Tea Co., La. App., 72 So.2d 562, 564, and we quote with approval the jurisprudence as follows:
"Plaintiff's cause of action arises from LSA-C.C. art. 2316, declaring persons are responsible for the damage occasioned by their negligence, imprudence or want of skill. Under this statute a store keeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passage ways in a reasonably safe condition for use in a manner consistent with the purpose of the premises. See: Savoy v. G. F. Poole Mortuary, Inc., La.App.1952, 60 So. 2d 108; Boucher v. Paramount-Richards Theatres, Inc., La.App.1947, 30 So.2d 211; Lawson v. D. H. Holmes Co., La.App.1941, 200 So. 163; Greeves v. S. H. Kress & Co., La.App.1940, 198 So. 171; Bartell v. Serio, La.App. 1938, 180 So. 460; Bell v. Feibleman & Co., Inc., La.App. 1935, 164 So. 273; Grigsby v. Morgan & Lindsey, La.App. 1933, 148 So. 506; Huber v. American Drug Stores, 1932, 19 La.App. 430, 140 So. 120.
"He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances. See: Ellington v. Walgreen Louisiana Co., Inc., La.App. 1949, 38 So.2d 177; Knight v. Travelers Insurance Co., La.App.1947, 32 So. 2d 508.
"His liability arises only when injuries are caused by his negligence; Bishop v. F. W. Woolworth & Co., La. App.1942, 8 So.2d 701, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it *480 should have been discovered and removed. Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108.
"It is the settled jurisprudence of this state that the doctrine of res ipsa loquitur is inapplicable to a store keeper whose obligation toward his customer is the use of ordinary care to keep aisles, passage ways, floors and walks in a reasonably safe condition, and no presumption of fault of the store keeper arises from the mere fact of injury to a customer. See: Bartell v. Serio, La.App.1938, 180 So. 460; Powell v. L. Feibleman & Co. Inc., La. App.1939, 187 So. 130; Battles v. Wellan, La.App. 1940, 195 So. 663; Greeves v. S. H. Kress & Co., La.App. 1940, 198 So. 171; Lawson v. D. H. Holmes Co., La.App.1941, 200 So. 163; Joynes v. Valloft & Dreaux, Inc., La. App.1941, 1 So.2d 108; Relf v. Aetna Casualty & Surety Co., La.App.1941, 1 So.2d 345; Hays v. Maison Blanche Co., La.App.1947, 30 So.2d 225."
Therefore, according to the facts as found in this record and the jurisprudence as above referred to, we must come to the conclusion that there was no manifest error in the judgment appealed from and the same is hereby affirmed.
Judgment affirmed.