146 So.2d 804 (1962)
Mrs. Vesta CANNON, Plaintiff and Appellee,
v.
GREAT ATLANTIC & PACIFIC TEA COMPANY, and Aetna Casualty and Surety Company, Defendants and Appellants.
No. 633.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
Rehearing Denied December 10, 1962.
Certiorari Denied January 14, 1963.
Lunn, Irion, Switzer, Trichel & Johnson, by Harry A. Johnson, Jr., Shreveport, for defendants-appellants.
Bethard & Bethard, by Henry W. Bethard, III, Coushatta, for plaintiff-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a tort action instituted by Mrs. Vesta Cannon against Great Atlantic & Pacific Tea Company and its insurer, Aetna *805 Casualty and Surety Company, arising out of an accident which occurred in Natchitoches, Louisiana, on March 3, 1960. Plaintiff alleges that she slipped and fell on the floor of a store operated by the first named defendant in Natchitoches, and that the fall was caused by the negligence of that defendant in failing to keep the floors, aisles and passageways in the store in a reasonably safe condition for customers. She demands damages for the personal injuries allegedly sustained by her as a result of this fall.
The defendants answered denying the allegations of negligence, and alleging specifically that plaintiff was barred from recovery by contributory negligence. After trial of the case judgment was rendered by the District Court in favor of plaintiff awarding her damages in the amount of $2,255.00, and defendants have appealed from that judgment. Plaintiff has answered the appeal seeking to have the amount of the award increased.
The evidence establishes that at about 1:00 P.M. on the above mentioned date plaintiff, who was then about 62 years of age, went to the insured defendant's store in Natchitoches to purchase food, being accompanied by her son and grandson. While in one of the aisles running between merchandise counters in the store, she slipped and fell to the floor and as a result of that fall she sustained the injuries which form the basis for this suit. She was carrying some small items of merchandise and her purse on one arm and was reaching for something on a counter with the other when the accident occurred. In her testimony she attributes her fall to the fact that the "floor was slick," that "it looked like it had oil on it," that some of the floor boards were pieced together and were uneven at the joints, and that one of such boards sagged slightly when a person stepped on it. Her statement that the floor looked like it had oil on it apparently was not based on her observation of the floor itself, but on a deduction made from the fact that after the fall there were some marks on her dress which looked to her like oil and dirt mixed up together.
The floor of this store was constructed of three-inch pine boards, and these boards had been laid so that they ran diagonally across the floor area of the building, or from one corner of it to the other. The building was relatively old, and this floor had been in use for at least 25 years. On the evening before this accident occurred, the floor of the store was treated with a liquid preparation known commercially as "Myco-Sheen." This compound was applied with a mop that evening and was left overnight to dry on the floor. About 10:30 A.M. the following day, the floor was swept by an employee of the insured defendant "to clear it of dust and dirt and different things." The accident which resulted in plaintiff's injuries occurred about 1:00 P.M. that day, or about two and one-half hours after the floor had been swept.
The compound which had been used on this floor the day before the accident is a standard product used in public buildings which have wooden floors. It is used to preserve and treat the wood, to improve the appearance of the floor, to keep down dust and to make the floor "easily walkable." This Myco-Sheen compound has been used generally by the insured defendant in its stores throughout the United States, and according to the testimony of some of its employees, it does not contain any wax or other slippery ingredients. There is no evidence tending to show that it does contain an ingredient which would make the floor slick. The compound usually was applied on the floor of this store about once every four weeks, and it apparently was applied properly the day before this accident occurred. The evidence also shows that there was no other substance of any kind on the floor near the place where this accident occurred.
The trial court found that "Through the years, the planks (of the floor) had worn to the extent that the soft wood between the hard flat grains is less prominent and *806 lower than the hard flat grains themselves." He also found that plaintiff's dress was soiled at the places where it came in contact with the floor at the time of the fall. We agree with the trial judge in his conclusions as to these facts, but we think he erred in making the further "reasonable deduction" from those facts that "more Myco-Sheen would be absorbed in some places than in others," and that "this appears to be the case at the place where plaintiff fell, as her dress appeared to be soiled from some liquid or dampness on the floor."
Shortly after the accident occurred plaintiff's son examined the floor at the place where his mother had fallen, and he testified that the floor was very badly worn, and that it seemed to have an "oily looking substance" on it. He stated, however, that the floor at the site of the accident seemed to be the same as the floor throughout the store generally, and that "it looked like there was some oily substance on the floor that made it slicker, I think it was all over the floor, I don't know whether there was any more in that one spot or not." He further testified that "I can't say what really caused her to fall except by the floor being slick and worn." Plaintiff also testified that she did not notice any difference between the slickness of the floor at the place where she fell and the rest of the floor, and further that she had shopped in the same store on two occasions since the accident and found the floor on those occasions to be in the same condition as it was at the time she fell. The testimony of plaintiff and her son constitutes the only evidence we have found which tends to show that the floor was slippery at all, and we do not think it supports a conclusion that an excessive amount of the floor treating compound had failed to absorb at the spot where plaintiff fell, causing the floor at that particular location to be slicker than the rest of the floor.
Five persons who were employed in the store at the time of the accident (some of whom are no longer so employed) testified that there was no oily or greasy substance on the floor at that time, that the floor was not slippery and that they had never seen or heard of anyone slipping on the floor of the store before the accident occurred. The store manager estimated that approximately 2,500 persons walked in the aisles of the store every week, and no one prior to this time had found the floor to be slippery. The employee, who had swept the floor of the store about two and one-half hours before plaintiff fell, testified that at the time he swept it the floor was not slippery and that there was no excess of Myco-Sheen compound at any place on the floor.
Plaintiff and her son also testified that one floor board at the place where plaintiff fell was weak and that it sagged when someone stepped on it. Plaintiff contends that this also was one of the defects in the floor which caused her to fall. Their testimony to this effect was denied by a number of witnesses, and the trial judge did not find that there was any such weak or unstable board in the floor. We think the evidence fails to show that there was any weakness or unevenness in the floor sufficient to cause plaintiff to fall.
A former employee, Miss Norsworthy, was one of the first persons to get to plaintiff after the fall, and she testified that immediately after she got there plaintiff exclaimed several times that she must have turned her foot. Plaintiff denies that she made any such statement, but she testified that immediately after the fall she did state that she did not know why she fell, but "I thought that I must have hung the edge of my shoe sole, you know, where the planks join." It seems to us that if plaintiff had slipped on some oily or slick substance on the floor, she would immediately have assigned that as the reason for her fall instead of saying that she hung the edge of her shoe where the planks joined. The fact that she did not mention slipping or that the floor was slick at that time indicates to us that the floor was not as slippery as she now contends.
*807 The well established jurisprudence of this state is to the effect that a person who enters a store for the purpose of trade occupies the status of an invitee or business visitor, and that the owner or proprietor of such a place must exercise ordinary care and prudence to keep the aisles, passageways, floors and walks in a reasonably safe condition for his customers who are on the premises by his implied invitation. In order to maintain an action by a customer against the owner of a store for apparent defects in the building two elements must concur, viz., fault on the part of the proprietor, and ignorance of danger on the part of the customer. Farrow v. John R. Thompson Company, 18 La.App. 404, 137 So. 604; Huber v. American Drug Stores, Inc., 19 La.App. 430, 140 So. 120; Ransom v. Kreeger Store, Inc., La.App.Orl., 158 So. 600; Bartell v. Serio, La.App.Orl., 180 So. 460; Burdeaux v. Montgomery Ward and Company, Inc., La.App. 2 Cir., 192 So. 728; Battles v. Wellan, La.App. 2 Cir., 195 So. 663 (cert. denied); Greeves v. S. H. Kress and Company, La.App.Orl., 198 So. 171; Lawson v. D. H. Holmes Company, La.App.Orl., 200 So. 163; Hays v. Maison Blanche Company, La.App.Orl., 30 So.2d 225; Peters v. Great Atlantic and Pacific Tea Company, La.App. 2 Cir., 72 So.2d 562; Grelle v. Patecek, La.App. 1 Cir., 74 So.2d 349; Alana v. Burnstein, La.App.Orl., 86 So.2d 401; Meyerer v. S. H. Kress and Co., La. App. 1 Cir., 89 So.2d 475; Dyer v. Stephens Buick Co., La.App. 4 Cir., 125 So.2d 185; Baker v. Hartford Accident and Indemnity Company, La.App. 1 Cir., 136 So.2d 828 (cert. denied); Knight v. National Food Stores of Louisiana, Inc., La.App. 1 Cir., 142 So.2d 511; See also 63 A.L.R.2d 591.
Although the law imposes a duty of reasonable care toward the invitee, it does not make the storekeeper the absolute insurer of the safety of persons properly on the premises, and his liability does not arise unless and until it is established that the injury or loss was caused by his negligence. Huber v. American Drug Stores, Inc., supra; Lawson v. D. H. Holmes Company, supra; Meyerer v. S. H. Kress and Company, supra; Baker v. Hartford Accident and Indemnity Company, supra; Knight v. National Food Stores of Louisiana, Inc., supra; Joynes v. Valloft & Dreaux, La. App.Orl., 1 So.2d 108; Bishop v. F. W. Woolworth & Company, La.App.Orl., 8 So.2d 701.
The jurisprudence further is established to the effect that the doctrine of res ipsa loquitur does not apply in suits against a storekeeper to recover for injuries sustained in falls on waxed, oiled or similarly treated floors within the business premises. Hays v. Maison Blanche Company, supra; Baker v. Hartford Accident and Indemnity Company, supra; and see Annotation, 63 A.L.R.2d at page 625.
The case of Farrow v. John R. Thompson Company, supra, 18 La.App. 404, 137 So. 604, involved a fall on the floor of a restaurant, and in that case the Court stated:
"* * * we have no difficulty in finding the law to be that the owner or proprietor of such place must exercise ordinary care and prudence to keep the aisles, passageways, floors, and walks in a reasonably safe condition for his customers who are on the premises by his implied invitation."
The rule was stated, correctly we think, in Peters v. Great Atlantic & Pacific Tea Company, supra, as follows:
"* * * a store keeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passageways in a reasonably safe condition for use in a manner consistent with the purpose of the premises. * * *
"He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances. * * *"
*808 In Hays v. Maison Blanche Company, supra (30 So.2d 225), the plaintiff claimed to have fallen on a "greasy spot" in defendant's store. In that case, as in the instant suit, plaintiff reasoned that the floor was slippery because she later found some streaks on her dress which looked like grease, whereas a number of defendant's employees testified that there was no oily or foreign substance on the floor where plaintiff fell. The court in rejecting plaintiff's demands made the following statement which we think is applicable to this case:
"The law is well settled that the doctrine of res ipsa loquitur does not apply to a storekeeper, and his obligation to his customers and invitees is to use ordinary care to keep the aisles, passageways and floors of his premises in a reasonably safe condition. * * *
"In the case before us there is no proof that there was any grease, soap, water or other foreign substance on the floor at the spot where plaintiff fell. Several employees of Maison Blanche Company testified that immediately after the accident they made an examination of the floor but did not discover anything thereon which might have caused plaintiff to fall. The mere fact that there were greasy streaks upon the shoulder and back of the dress which plaintiff had worn is not proof that there was grease upon the floor of the store when she fell. * * *
"We are unaware of any case in which the operator of a store has been held liable for accidental injuries to a customer without proof of negligence based on some act of commission or omission on the part of the store operator. * * *"
The facts in Meyerer v. S. H. Kress and Company, supra (89 So.2d 475), are strikingly similar to those presented here. In that case the plaintiff and her sister testified that a greasy substance was on the floor of defendant's store where plaintiff fell. As in this case, the plaintiff did not examine the floor but she concluded that it was oily and greasy because after the accident her dress had spots on it and her stockings looked black and greasy. A number of defendant's employees testified that the defendant had established an elaborate system by which the floors were kept as clean as possible, and all of the employees who examined the place where plaintiff fell agreed that there was no oily substance on the floor there. As in this case, the floor dressing commercially known as "Myco-Sheen" was used on the floor, and plaintiff contended that it left the floor slippery causing her to fall. In holding that the trial court had correctly rejected plaintiff's demands, the Court of Appeal said:
"The trial judge in his oral reasons for judgment stated that he personally felt the mops which had been saturated with Myco-Sheen and that the latter did not feel like oil or grease, but, on the contrary, was easily wiped off leaving the fingers dry with a slight roughness. The trial judge went on to state that while his sympathies were with the plaintiff, he was unable to find from the evidence introduced any proof as to the cause of the accident or any showing of negligence on the part of the employees of Kress."
Also, in Greeves v. S. H. Kress and Company, supra (198 So. 171), recovery was denied where plaintiff, a 65 year-old woman, attributed her fall to the fact that an excess amount of "Myco-Sheen" floor dressing had been allowed to remain on the floor.
In applying the rules hereinabove set out to the facts in this case, we must conclude that plaintiff has failed to establish that the insured defendant was negligent in failing to maintain his premises in a reasonably safe condition. Plaintiff's proof of the fact that her fall was due to the slippery condition of the floor consists almost wholly of the fact that she fell, and her testimony and that of her son that the floor generally throughout the store *809 was slippery. On the other hand, a number of witnesses who examined the floor shortly after the accident occurred testified that the floor was not slick and that there was no wax, oil or foreign substance on it.
The trial judge felt that the "negative testimony" of the employees of the store did not overcome the "positive testimony" of the plaintiff and her son that the floor was slippery where the fall occurred. While we agree that it is a general rule of evidence that, all other things being equal, affirmative testimony is stronger than negative, we do not consider the testimony of the employees of the store in this case to be "negative testimony." Most of those witnesses testified that the floor was not oily, greasy or slippery, and we think that constitutes positive testimony. In Greeves v. S. H. Kress and Company, supra, 198 So. 171, the Court used the following language which we think is appropriate here:
"But the testimony of the defendant's witnesses is not negative. * * * Defendant's witnesses did not say that they did not see any oil or grease on the floor, as would have been the case if their testimony had been negative, but, on the contrary, they said that there was no oil or grease there.
"In Franklin v. New Orleans Public Service, Inc., La.App., 187 So. 126, 130, we said: `It is quite true that more weight should be given to affirmative testimony,where one witness, for instance, says that he saw something and another says that he did not see it, great weight should be given to the affirmative statement of the first. But here the witnesses on behalf of plaintiff state that the bus moved and the witnesses on behalf of defendant state that it did not move. We do not see that the testimony on behalf of defendant is negative merely because its witnesses deny that something happened.'"
As had already been pointed out, the evidence shows that a large number of persons walk on the floor of the store every week, and no one apparently had slipped or fallen on the floor prior to the time of this accident. We think this is a circumstance which should be considered and which strongly indicates that the floor has been maintained in a reasonably safe condition for customers. We agree with the trial judge that the fact that no one has slipped before "does not disestablish the fact that there existed a damp, or moistened, spot on the floor" at the time and place where plaintiff fell. But, we think the evidence here shows clearly that there was no damp, or moistened, spot on the floor when the accident occurred, but that the floor at the time of the accident was in the same condition as it had been normally prior to that time. The fact that no one apparently had found it to be slippery before this seems to us to be significant. In Lawson v. D. H. Holmes Company, La.App. Orl., 200 So. 163, the court held that no complaints of other accidents had occurred on the steps involved in that case "is a strong circumstance which must be considered by us in determining the condition of the step." And, in Grelle v. Patecek, La. App. 1 Cir., 74 So.2d 349 (cert. denied), where the floor of defendant's building had remained in the same condition for 16 years and no accidents had occurred, the court considered that fact as an indication that the floor was safe and not hazardous.
Plaintiff relies principally on three cases in which recovery was allowed: Ransom v. Kreeger Store, Inc., La.App.Orl., 158 So. 600; Redon v. Standard Accident Insurance Company of Detroit, La.App.Orl., 161 So. 762; and Johnson v. Puyoulet, La.App. Orl., 47 So.2d 122. We think each of these cases is easily distinguishable from the instant suit. In the Ransom case the evidence established that there was a "wet spot" on the floor where plaintiff fell, and on the basis of those facts the court held that plaintiff had established negligence on the part of the defendant. No such convincing proof is found in this case. In Redon v. Standard *810 Accident Insurance Company of Detroit, plaintiff proved that the floors of defendant's store had not been scrubbed for several years, and that the cleaning compound there used contained a neutral oil in the extent of 25 per cent of its weight. The court concluded, properly we think, that since the floors had not been scrubbed for several years, a considerable amount of oil had accumulated upon the floor in some spots. In the case at bar there was no proof that the floor dressing used in this instance contained any ingredients which would make the floor slippery. In the Johnson case, supra, it was proved that a floor treating compound had created a dangerous condition on the floor, causing plaintiff's fall. In that case, however, the compound used there was being used on an experimental basis in defendant's store, and an improper mixture of the compound had caused the floor to be slick. The product used in the case at bar is apparently well established on the market, and there is no evidence that an improper mixture was used here.
After considering all of the facts we conclude that plaintiff has failed to establish negligence on the part of the proprietor of the store involved in this case, and, accordingly, that the trial court erred in permitting the plaintiff to recover.
For the reasons herein set out, the judgment of the District Court is reversed and judgment is rendered herein in favor of defendants and against plaintiff, rejecting plaintiff's demands at her costs. All costs of this appeal are assessed to plaintiff-appellee.
Reversed and rendered.
TATE, Judge (dissenting).
I respectfully dissent.
If the function of an appellate court is to reconstruct the facts, without any reference whatsoever to the trial court's findings and its evaluation of the witnesses, then I have no serious quarrel with the majority opinion herein. It is certainly a reasonable construction of the evidencealmost as reasonable as that made by the trial court.
But, if the majority is correct in this case, then there is no use having a trial below. What the majority has done is to completely ignore the findings and evaluations of the trial court in its exceptionally thorough and well-written opinion, in order to make completely different findings of fact based upon a simple nose-count of the witnesses. Since five store employees testified against the plaintiff and her son, the plaintiff loses, according to the majority, without any reference whatsoever as to which of the witnesses testified accurately.
With great respect for my brethren of the majority, it completely escapes me how the majority has explained away the testimony of the plaintiff and her son that, following her fall, her dress was stained with an oily slick substance (which the trial court found to be a fact) and that, at the spot of her fall, the floor was oily and slick with some substance. It is true that, not surprisingly, the janitor testified that he did not place any excess of myco-sheen compound on the floor at the spot; and that, in a direct conflict of testimony, the store manager testified that, per the request of the plaintiff's son, he looked at the floor following the accident and did not see the slipperiness about which the plaintiff's son and the plaintiff herself complained at the time.
Of course, if the defendant's witnesses did testify truly then the plaintiff's skirt could not have been stained with the oily substance and the floor was not slippery at the spot of her fall. The plaintiff and her son, then, were testifying falsely. On the other hand, if the plaintiff and her son were testifying correctly, then the contrary testimony of the defendant's witnesses was inaccurate.
The trial court resolved this conflict of testimony in favor of the accuracy of the plaintiff's witnesses. I am completely unable to understand how, on the basis of the record, this appellate court can state that the plaintiff's witnesses testified falsely, simply *811 because the defendant's witnesses stated facts to the contrary.
I have always thought, and the jurisprudence is to this effect, that the trial court's findings of fact, especially when based on the credibility of witnesses, were not to be disturbed except in the case of manifest error. I have always thought that when the trial court has accepted the testimony of one set of witnesses as true, that an appellate court should not accept contrary testimony of an opposing set of witnesses as gospel. I can see no reason for this appellate court to say that the plaintiff has not borne her burden of proving her case, simply because the defendant produced two or three witnesses who testified contrary to her position (and who testified inaccurately, according to the findings of the trial court).
The trial court resolved the conflict of testimony in the plaintiff's favor. I do not see how any appellate court can say that one or the other set of witnesses was more accurate than the otherit depends simply upon the evaluation of the truthfulness of the witnesses, which the trial court is in a far, far better position to make than is an appellate court.
As the trial court noted, although perhaps hundreds of people over the twenty-five years of the existence of the store had passed over the spot and had not fallen, this does not prove in the least that at the time the plaintiff fell the spot was not hazardous to the store customers because of a combination of an excessive slipperiness resulting from the application of a floor preserver, as well as of the defective and giving nature of the floor. The store manager himself admitted that the "Myco-Sheen" floor compound produced excessive slipperiness at the time it was applied and that the application of an excess of the preparation at the spot would produce this excessive slipperiness for a longer length of time, since it would take longer to be absorbed by the wood. Tr. 87-88. In countering the testimony of the plaintiff and her son that the floor at the spot was in fact slippery immediately following her fall, there is only the testimony of the store manager and another employee that they examined this spot in the floor at the time and found that it was not slippery.
Like the trial court, I also find completely unimpressive the eager testimony of a young former cashier (which is supported by no other of the witnesses, most of whom were in the vicinity at the time) to the effect that Mrs. Cannon, right after her fall, stated that she had slipped because her ankle had turned. In fact, another of the defendant's witnesses who was running the meat counter at the time, and who is the only witness who actually was watching Mrs. Cannon at the time she fell, stated that she was facing the counter and that all of a sudden (as she herself had testified) her feet just slipped out from under her. (Tr. 94.)
It is interesting to note that the authorities relied upon by the proposed majority opinion concern affirmances of a trial court's finding that the tesimony of the store keeper preponderated to the effect that the mycosheen floor dressing had not been allowed to remain on the floor in an excessively slippery conditionnamely that it had dried sufficiently not to be dangerous. See Meyerer case, 89 So.2d 475, and Greeves case, 198 So. 171. I do not read these cases as holding that, as a matter of law, floors treated with myco-sheen are not excessively slippery at any time, even if an excessive amount has been placed upon the floor.
What the present case comes down to simply, again, is a determination of whether the plaintiff and her son were testifying accurately, rather than the store employees.
If we hold that a storekeeper is always right when it produces five employees who testify generally that the floor is not slippery because they perform their duties properly, we might as well read out of the law any right of a store customer to recover for injuries occasioned because of a fall.
The store patron only testifies as to what she realizes in the brief instant of a fall. Here, where no serious injuries were *812 thought to have resulted (although, as it subsequently developed, she had actually fractured a rib), the plaintiff patron and her son examined the floor right after the fall, found it slippery, and showed it to the floor manager. They left the store contented, after the store manager volunteered (in what is certainly atypical behaviour, if the floor was not slippery) to pay her $5.00 for what at the time was thought to be her principal injury, a cracked purse, even though she had not requested such payment from him.
The store keeper has in its possession all of the evidence surrounding what made this floor slippery, if it was. It is only natural that the store employees feel that no fault on their part or on the part of their co-employees, with whom they associate daily, had contributed to the accident. Whether they are accurate in this feeling and whether their testimony at the trial, more than a year after the accident, truly reflects what they actually saw and knew at the time (or rather is what they thought should have been the situation or is what mutual inter-conversations over the year had assured them was the situation), is a matter for the trial court to determine by its evaluation of the credibility and accuracy of the witnesses.
It is not and cannot be a matter for the appellate court to determine, based solely upon the cold record, and without allowing any weight whatever to the trial court's evaluation to the witnesses.
With great respect for the sincerity of my brothers of the majority, I must respectfully disagree with them in their substitution of their evaluation of the witnesses for that of the trial court.
As the Supreme Court stated in Olivier v. Abunza, 226 La. 456, 76 So.2d 528, 530:
"This Court has a rule, which is but a splendid affirmation in determining evidence taken by another court, that where the judge has seen, has heard, and has observed the witnesses and the many things that transpire in a court-room which are not susceptible of being taken down by a stenographer, that his judgment on a question of fact will never be disturbed unless manifestly erroneous."
For these reasons, I respectfully disagree with the majority's reversal of our trial brother.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from refusal to grant a rehearing.