REID, Judge.
Plaintiff, Alice Gibson, brought this suit against J. C. Penney Company, Inc., and its insurer, Travelers Insurance Company, to recover damages for personal injuries and medical expenses sustained when she slipped and fell while descending the stairway leading from the ground floor to the basement floor of the J. C. Penney Company downtown store in Baton Rouge, Louisiana, on March 19, 1960, at approximately 11:00 A.M. Plaintiff alleged in her petition that her fall was caused by the negligence in design, construction and maintenance of the stairway, the existence of a faulty step-off at the threshold at the top of the stairway, improper lighting and lack of any warning or sign indicating the dangerous condition of the stairway. However, the only contention of negligence by the plaintiff on the trial of the case and in her brief was that she fell as a result of highly polished and slippery steps caused by wax or other substance placed on the steps. Judgment was rendered by the Lower Court in favor of the defendants and against plaintiff, dismissing plaintiff’s suit at her cost. No written reasons for judgment were given. Plaintiff appeals herein from this judgment.
The only evidence introduced by the plaintiff at the trial regarding alleged negligence on the part of J. C. Penney Company was the testimony of the plaintiff herself and a stipulation entered into between plaintiff and defendant as to what a certain witness, presently residing in New York, would testify if called upon to do so. The stipulation reads in pertinent part as follows:
“Also if this witness who is in New York, Lucille Johnson, were called to testify she would testify that she was present at J. C. Penney’s Store on Third Street, Baton Rouge, Louisiana, on the date of the accident, i. e. March 19, 1960 and that she saw Alice Gibson fall on the fourth step from the top of the steps leading from the first floor to the basement of J. C. Penney’s store. That it appeared to Lucille Johnson that the step was shiny and that Alice Gibson fell hard when she fell.”
The testimony of the plaintiff is most indefinite and merely consists of her statement that she knows that there was wax on tlie steps because she saw it, and that she could see the floor was highly polished and slippery. She was unable to testify as to whether there was any wax on her shoes after the fall, whether any wax had come off on her clothes or her hands, or whether there was any foreign matter on the steps at the time of her fall. When asked:
“Q: Was there anything foreign— anything on the steps, cigarette butts, orange peels, banana peels, anything that wasn’t supposed to be there ?”
*586 she answered:
"A: I didn't pay any attention to see—
"Q: You didn’t see any then?
“A: I wasn’t paying any attention, you , know.”
Mr. Charles W. White, who at the time of the alleged accident was Assistant Manager of the store, testified as to the general policy of the store with regard to cleaning the floors and steps. He testified the floors and steps were scrubbed thoroughly approximately four times a year and that the floors were swept or mopped each morning with a yarn broom containing a chemical compound, but the steps were just mopped each morning with a damp mop with no other special preparation of any sort added. He stated no soap was used on the floors or the steps except for the special cleaning approximately four times a year which was done at night after the store closed. He testified that to his knowledge no wax type substance was ever used on the steps during the time he was Assistant Manager.
“Q: Do you all have anything in the store that is of a wax, say of a paste-type wax thing that you put on anything, put on walking surfaces ?
“A: Nothing other than that particular compound.
BY THE COURT:
“Q: What was the name of that, Mr. White?
“A: As I recall it was — I really don’t remember, sole-grip, or something like that.”
Philemon Chambers, who at the time of the alleged accident was a porter but was no longer employed by J. C. Penney Company at the time of the trial, testified on cross examination as follows:
“Q: What were your duties there at the J. C. Penney Store back on March 19, 1960 when this accident happened?
“A: What do you mean with reference to the steps, or the whole store ?
“Q: The whole works, what did you do at the store?
“A: Well, I was in charge of general cleaning. I went over the whole store. I had a schedule. Naturally, the first thing I did was I got some clear water and a mop and I mopped the steps and stairway from the balcony down to the basement. I did that every morning and I had a dust mop that had a special chemical treating that I used on the floors and after I mopped the steps I went over the floors with the dust mop. , ,
“Q:. Pardon me for interrupting you there, Philemon, you say you went over the floors with a dust mop, did you ever go over the steps with the dust mop ?
“A: No, sir, never did.
“Q: Mr. White referred to a yarn broom. Did you ever go over the steps with a yarn broom, or dust mop, or whatever you call it?
“A: I never did, no sir.
“Q: Never in the time that you worked for J. C. Penney’s did you ever go over the steps with this dust mop?
“A: No sir.
“Q : You are sure about that?
"A: Quite sure.
* * * * * *
“A: Well, actually, it was just a damp mop. It wasn’t any water that you could see splashing down the steps.
“Q: Did you have anything besides clear water in this solution that you used every morning on the steps?
“A: No, sir.”
*587 He also testified that at no time during the balance of the day did he remop or re-clean the stairs but merely picked up paper and cigarette butts or any items that happened to fall upon the steps.
John L. Hoover, who at the time of the alleged accident was employed by J. C. Penney Company as a manager-trainee but at the time of the trial, was no longer in the employ of that company, testified he probably was the first employee of the store to be aware of the fact that the plaintiff had fallen. He testified he had examined the steps at the time and had found no foreign substance on the steps whatsoever. His testimony was corroborated by Mr. August F. Ramser, Jr., who at the time of the alleged accident was a department head in charge of the basement but at the time of the trial was no longer employed by J. C. Penney Company. Mr. Ramser testified he also had examined the steps and had found nothing unusual about them, that there was no foreign substance on the steps that he could see and he had walked up and down both sides of the steps and as far as he could tell there was nothing on the steps of such a nature as to cause someone to slip.
It was brought out during the trial that at the time of her fall plaintiff’s left shoe had come off and it was noted she was wearing one and three-quarter inch wedge heel shoes with no straps across the back, which counsel for defendants argued could very well have caused the accident.
This case is very similar to the case of Meyerer v. S. H. Kress & Co., La.App., 89 So.2d 475 (1st Cir. 1956), and to Stillwell et al. v. Winn-Dixie Hill et al., La.App., 146 So.2d 707, and Gammill v. J. C. Penny Company, Inc., 156 So.2d 94, all decided by this Court and dealing with claims of plaintiffs who allege they fell due to substances upon steps or floors of a store. In the Meyerer case this Court held as follows:
“An award to the plaintiff could only be justified on an assumption by us that some substance was on the floor which caused her to slip. The evidence fails to reveal that in fact any such substance was present and for us to assume from the mere fact that she fell that one was present, would be improper and unwarranted.
“The jurisprudence of this state with reference to slip-down cases was thoroughly reviewed by the Second Circuit Court of Appeal of this state in the case of Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562, 564, and we quote with approval the jurisprudence as follows:
“ ‘Plaintiff’s cause of action arises from LSA-C.C. art. 2316, declaring persons are responsible for the damage occasioned by their negligence, imprudence or want of skill. Under this statute a store keeper has the responsibility to provide a safe place for his customers. He is not the insurer of their safety, however, and need only keep floors and passage ways in a reasonable safe condition for use in a manner consistent with the purpose of the premises. See: Savoy v. G. F. Poole Mortuary, Inc., La.App.1952, 60 So.2d 108; Boucher v. Paramount-Richards Theatres, Inc., La.App.1947, 30 So.2d 211; Lawson v. D. H. Holmes Co., La.App.1941, 200 So. 163; Greeves v. S. H. Kress & Co., La.App, 1940, 198 So. 171; Bartell v. Serio, La.App.1938, 180 So. 460; Bell v. Feibleman & Co., Inc., La.App.1935, 164 So. 273; Grigsby v. Morgan & Lindsey, La.App.1933, 148 So. 506; Huber v. American Drug Stores, 1932, 19 La.App. 430, 140 So. 120.
“ ‘He must exercise the degree of care that would be exercised by an ordinary prudent man under similar circumstances. See: Ellington v. Walgreen Louisiana Co., Inc., La.App.1949, 38 So.2d 177; Knight v. *588 Travelers Insurance Co., La.App. 1947, 32 So.2d 508.
'‘His liability arises only when injuries are caused by his negligence: Bishop v. F. W. Woolworth & Co., La.App.1942, 8 So.2d 701, and not as a result of an extraneous object in the store or upon the floor unless the object was dangerous and allowed to remain a source of danger for a longer period of time than that in which it should have been discovered and removed. Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108.
“ ‘It is the settled jurisprudence of this state that the doctrine of res ipsa loquitur is inapplicable to a store keeper whose obligation toward his customer is the use of ordinary care to keep aisles, passage ways, floors and walks in a reasonably safe condition, and no presumption of fault of the store keeper arises from the mere fact of injury to a customer. See: Bartell v. Serio, La.App.1938, 180 So. 460; Powell v. L. Feibleman & Co., Inc., La.App.1939, 187 So. 130; Battles v. Wellan, La.App.1940, 195 So. 663; Greeves v. S. H. Kress & Co., La.App.1940, 198 So. 171; Lawson v. D. H. Holmes Co., La.App.1941, 200 So. 163; Joynes v. Valloft & Dreaux, Inc., La.App.1941, 1 So.2d 108; Relf v. Aetna Casualty & Surety Co., La.App.1941, 1 So.2d 345; Hays v. Maison Blanche Co., La.App.1947, 30 So.2d 255.’ ”
This position was reiterated by this Court in both the Stillwell and Gammill cases.
Although the Trial Judge did not assign written reasons for judgment, after reviewing the facts in the record and applying the facts to the jurisprudence as expressed above, it is the view of this Court that the plaintiff has failed to prove her case.
Affirmed.