BARNETTE, Judge.
The plaintiff, Mrs. A. T. Staples, fell and was injured in the F. W. Woolworth Store, located at the corner of Canal and North Rampart Streets in the City of New Orleans, on February 15, 1964. She brought suit for damages and was awarded a judgment of $4,386 against F. W. Woolworth, Inc., and its insurer, The Travelers Insurance Company. This award represents special damages for medical expenses in the amount of $636, and general damages of $3,750. The defendants have appealed denying liábility, but have made no issue of the quantum of the award.
On the morning of the incident Mrs. Staples entered the store from its side entrance on North Rampart Street and was served coffee at the lunch counter located on the side of the store accessible from the North Rampart entrance. After consuming her coffee she attempted to leave the store by means of the Canal Street door. After walking a short distance toward the Canal Street exit, she slipped and fell and sustained the injuries of which she complains.
The question presented for our consideration is whether or not there was some substance on the terrazzo floor negligently left there by the defendant’s employees which caused Mrs. Staples to fall. If this question is answered affirmatively, we must then determine if plaintiff is barred from recovery of damages by her own contributory negligence.
The Woolworth Store in question does not open for general business until 9:30 a. m., but its lunch counter is opened for breakfast and morning coffee customers and for the convenience of its own employees at an earlier hour. On the morning of the incident the doors leading to the lunch counter from North Rampart and from Canal Street were opened at 8 o’clock. The general store area was roped off so customers entering for breakfast from North Rampart or Canal Street would proceed along an aisle on one side of which is the lunch counter. Opposite the lunch counter is a cosmetic counter creating an aisle about 6 feet in width. At the Canal Street end of the aisle is a bakery counter and it was at a point near this bakery counter that the plaintiff fell.
The plaintiff, a practical nurse, was employed at the time by a couple who lived a relatively short distance from Woolworth’s Store. She was due to report for work at 9 a. m. In keeping with her custom, two or three times a week she stopped by Woolworth’s for a cup of coffee on her way to work. On the morning in question she arrived there about 8:15 and entered through the North Rampart Street door. After consuming her coffee she was in *102 the act of leaving' by means of the Canal Street exit when, before reaching a slight turn in the aisle leading to that doorway, she slipped and fell.
The customary routine preceding the opening of the store for business each day is for the terrazzo floor to be wet mopped with suds and then dry mopped. On the morning in question according to the testimony of the floor manager Alex Mailhes, the store’s porter Bufkin White was running late and was instructed to- mop the lunch counter area first because in his words, “I just told him to catch the front section first. I had to open up.” Mr. Mailhes testified that the floor was “damp dry” when the doors were opened at 8 a. m. There is some conflict between Mailhes’ testimony and the testimony of White. White stated that he reported to work at S o’clock that morning and started cleaning the “section from the middle door up into the front where this lady had fallen, and we had finished that part of the store and we were working on another routine, cleaning some signs up over the particular doughnut bar.” He said he finished mopping the floor about an hour before Mrs. Staples fell. He also said it requires about seven to eight minutes for the floor to dry completely after the last mopping procedure.
White was in fact on a stepladder behind the doughnut counter cleaning a sign over the counter, with a mixture of water and ammonia, when the accident occurred. Mrs. Staples fell about an arm’s length in front of the counter. Whether or not there was in fact some wet substance on the floor which caused her to slip is the question to be answered first.
The trial judge found as a fact that there was a wet substance on the floor where plaintiff fell. He did not expressly determine whether it was a residue from the mopping which had not completely dried, or the drippings from the sign cleaning. However, he held that in either event the Woolworth employees had not exercised the care required of them to- keep the premises reasonably safe for invitees. In reaching this factual conclusion, he attached material significance to the failure of defendants’ witnesses to contradict the testimony that Mrs. Staples’ uniform was wet where it had come in contact with the floor. He found this to be sufficient evidence to- establish the presence of a wet substance on the floor which caused plaintiff to slip and fall.
Counsel for defendants has pointed out by brief in this court that the plaintiff had come to town by means of a streetcar and had walked to the defendant store in a light rain protected by an umbrella but without a raincoat. From this he argues that the wet condition of her nurses’ uniform could have been the result of exposure to- rain. The answer to this argument is found in Mrs. Staples’ testimony that while she saw no soap or water on the floor, she did find that it (meaning soapy water) was on her uniform. She testified:
“A It was on my uniform.
“Q Did you see any other — anything on the floor after you fell? Any oil, any foreign matter, any foreign substance or anything?
“A Only thing I saw is where I slipped and the man came, as I told you, and wiped it up.
“Q Where you slipped?
“A Where I fell, where I slid, you know.
“Q What was that?
“A To me, on my uniform, it looked like soap. It was water and soap on my uniform.
“Q Was there a skid mark left there?
“A Yes.
“Q Is that what he wiped up?
“A Yes.
“Q Was this from your heel or from your sole or do you know ?
“A From the sole of my shoe.”
*103 Obviously if the plaintiff had any foreign substance on her clothing, it was not from exposure to rain. This is the testimony which the trial judge alluded to as being uncontradicted. We think it is significant also that a “skid mark” was left which required wiping up. We think this was more likely to have been left on a wet floor than on a dry terrazzo surface.
The question of contributory negligence was resolved in plaintiff’s favor. The trial judge referred to a photograph filed in evidence which shows a glare cast upon the floor by the light coming through the glass store front — a condition which he reasoned would make it more difficult for a person walking in that direction to distinguish wetness from the similar appearance caused by the light.
There is nothing in the testimony of the witnesses nor is there any other evidence which would justify a finding of manifest error in the conclusion reached by the trial judge.
A storekeeper is not the insurer of the safety of his customers, and he is responsible for injuries sustained by them only as a result of his negligence in providing a safe place for them. Sigler v. Mount Vernon Fire Insurance Company, 201 So.2d 656 (La.App.3d Cir. 1967); Fowler v. F. W. Woolworth Company, 169 So. 2d 754 (La.App.3d Cir. 1964); Meyerer v. S. H. Kress and Co., 89 So.2d 475 (La.App. 1st Cir. 1956). In providing a safe place, aisles and passageways, counters, fixtures, and all things necessary for the convenience of his customers and the facility of his establishment must be kept free of obstructions and defects which might reasonably be the cause of an injury to an unsuspecting person. Dever v. George Theriot’s, Inc., 159 So.2d 602 (La.App.3d Cir. 1964), and cases cited therein.
The trial judge was correct, under the facts found, in holding that the defendant Woolworth’s employees did not exercise the degree of care required of them for plaintiff’s safety and that plaintiff was free of contributory negligence.
From the testimony of the floor manager, Mailhes, we think it is reasonable to conclude that the mopping was done hurriedly and under pressure of time to get the lunch counter aisle opened by 8 a. m. Under such circumstance it is reasonable to believe that the mopping was not done with customary thoroughness which could account for a spot being missed by the dry mop. The opening of the doors to invite the entrance of customers without first ascertaining that the floor was completely dry and safe for unwary customers was negligence. It did not meet the standard of care required of the defendant.
Defendants allege in their appeal that plaintiff has not affirmatively shown sufficient causal connexity between the accident of February 15, 1964, and the physical injuries or condition for which she thereafter underwent treatment.
After reviewing the record, and in particular the testimony of the plaintiff; the store’s floor manager Mr. Mailhes; the plaintiff’s treating physician Dr. Myron C. Greenleaf; and defendants’ expert witness Dr. Hyman R. Soboloff, we are convinced that plaintiff did sufficiently prove the causal relationship between her fall and the injuries of which she complained. We therefore have no reason to change the trial judge’s decision in this regard.
The defendants have made no issue of the quantum of either the special or general damages. For this reason we think it is not necessary to discuss the nature of her injuries and the medical testimony in detail.
The judgment appealed from is affirmed at appellants’ cost.
Affirmed.