OPINION
{¶ 1} Appellants, Cathy and Charles Lewis, appeal the judgment of the Geauga County Court of Common Pleas entering summary judgment in favor of appellees, Ritondaro Funeral Home, Inc. and John M. Ritondaro, in this premises liability action. For the following reasons, we reverse the judgment of the court below.
 {¶ 2} On Monday, August 4, 2003, Cathy Lewis ("Lewis") attended the wake of a deceased friend at the Ritondaro Funeral Home, which is owned by John M. Ritondaro, in Chardon, Ohio. To enter the funeral home, it is necessary to traverse five steps from the sidewalk to the porch of the home. The steps are about 122 inches in width and are bisected by a metal handrail. At either end of the steps are low, brick sidewalls. The steps are covered with green indoor/outdoor carpeting. The (riser) height of the five steps, beginning from the top step and moving downward, is 6-and-5/8, 7-and-3/8, 6-and-3/16, 8-and-3/16, and 7-and-3/8 inches respectively. The (tread) depth of the steps varies from 16-and-1/2 to 18-and-1/2 inches. There is no evidence that the dimensions of the stairs vary within a given step.
 {¶ 3} On the day in question, the funeral home was crowded with people waiting to ascend and descend the steps. Lewis stated that it took her approximately five to ten minutes "to ascend the steps one at a time next to the rail." Lewis ascended the steps, entered the funeral home, stayed for a short time, and then exited the funeral home in order to descend the same steps.
 {¶ 4} When descending the steps, Lewis used the left-hand side of the steps (facing the funeral home), so that the handrail was to her left and the sidewall was to her right. Lewis stated in her affidavit in response to appellees' motion for summary judgment that, because of the crowd, she was forced to descend along the edge of the steps, using "the stone wall as a quasi railing to assist me in descending the steps." Lewis also stated in the affidavit that the steps were "bright green in color," which made it difficult for her to distinguish the beginning and ending of each step. In answer to appellees' interrogatory number 30, in which Lewis was asked to describe in detail how her injury occurred, she stated:
 {¶ 5} "I was going down the steps with my hand on the brick wall, stepping carefully. When I got near the bottom few steps I stepped down and felt an unusual gap between the steps while in motion. When my foot hit the step my ankle twisted turning my whole body as I fell to the sidewalk; hitting my whole body on the sidewalk as it threw me forward."
 {¶ 6} While descending the second-to-last step, which has an 8-and-3/16-inch riser, Lewis' ankle twisted as her foot "hit the step," with the result that Lewis fell and broke her ankle.
 {¶ 7} On July 18, 2005, appellants filed suit against appellees, alleging negligence. Appellees moved for summary judgment. In their brief in opposition to summary judgment, appellants attached the report of architect George C. Novotney. Novotney opined that the steps leading up to the Ritondaro Funeral Home were in a "dangerous and hazardous condition" at the time of Lewis' fall. Novotney asserted that the riser on which Lewis fell exceeded the maximum height of seven inches allowed by the Ohio Basic Building Code. In his opinion, "[w]hen you have risers over 7 inches, the certain or probable consequences are that people will fall. They will lose their balance and fall, injuring themselves." Novotney concluded that the uniformly green-colored carpeting rendered the excessive riser height a "dangerous and hazardous condition [that] was not open and obvious to Cathy Lewis on August 4, 2003." Novotney further noted that the steps were required to have handrails on both sides of the stairs.
 {¶ 8} On February 8, 2006, the trial court entered judgment in favor of appellees. The basis for the court's judgment was that "the condition of the steps leading to the Funeral Home was open and obvious."
 {¶ 9} Appellants timely appeal and raise the following assignment of error:
 {¶ 10} "The trial court erred to the prejudice of Cathy Lewis, appellant, when it granted summary judgment against her in favor of defendants."
 {¶ 11} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 12} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review.[1] A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.[2]
 {¶ 13} We shall first address the status of Lewis as a visitor to the funeral home on the day in question.
 {¶ 14} Appellees argue that Lewis' status upon its premises was as a licensee, rather than a business invitee. We disagree.
 {¶ 15} A licensee is defined under Ohio law as including a person "whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom."[3]
 {¶ 16} Business invitees, in turn, are defined as "'those who have come upon the land at the express or implied invitation of the possessor, for the purpose of transacting some business within the scope of the invitation.'"[4]
 {¶ 17} Lewis' presence upon the premises of the funeral home was at the implied invitation of the funeral home, extended through the funeral home's business agreement with the family of the deceased. The purpose of this agreement, financially beneficial to the funeral home, was to allow friends and family of the deceased to pay their respects. This was Lewis' purpose in visiting the funeral home. Accordingly, Lewis' status is that of a business invitee.[5]
 {¶ 18} Next, we shall consider the elements of appellants' cause of action for negligence.
 {¶ 19} "In order to establish actionable negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom."[6]
 {¶ 20} A business owner or occupier "owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger."[7]
 {¶ 21} However, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises."[8]
Further, "[w]here a hazard is open and obvious * * * it is unnecessary to consider the issues of breach and causation."[9] Moreover, a "plaintiff does not have to actually observe the dangerous condition for it to be an open and obvious condition under the law. Rather, the determinative issue is whether the condition is observable."[10] That is, the hazard must either be "known to the invitee or so obvious that he or she may reasonably be expected to discover it."[11]
 {¶ 22} In the instant case, the trial court entered summary judgment in favor of appellees on the basis that "the condition of the steps leading to the Funeral Home was open and obvious." However, our review of the record comes to the conclusion that, had the dangerous or hazardous condition of the step or steps upon which Lewis fell been open and obvious, the nature of the condition would have been observable and would have been apparent in the record. However, while Lewis put forth some evidence of a hazardous condition in the form of an "unusual gap," there is nothing in the record to indicate that such a dangerous or hazardous condition was observable. For that reason, we are reversing the trial court's entry of summary judgment.
 {¶ 23} Specifically, the record establishes that there were five steps in the front of the funeral home that were used to enter and exit the funeral home. The height and depth of each step differed from every other step. The steps were covered in green outdoor/indoor carpeting. There was a handrail in the middle of the steps, and a brick wall that was lower than the handrail on either side of the steps.
 {¶ 24} Lewis entered and exited the funeral home during daylight hours. In order to enter the funeral home, she proceeded slowly up the steps next to the handrail, because a number of people were lined up waiting to enter the funeral home. In order to exit the funeral home, she proceeded down the steps, using the brick wall to her right to assist her in descending the steps. According to her affidavit, "the steps were all bright green in color and it was difficult to differentiate the beginning and ending of each step." When she reached the fourth step from the top, according to her answer to appellees' interrogatory number 30, she "stepped down and felt an unusual gap between the steps while in motion." Her ascent and descent on the steps took slightly different paths. No problem was encountered on her ascent and no "unusual gap" is noted in the record. However, on her descent, she states that there was an "unusual gap" on the steps that she felt once her foot hit the step.
 {¶ 25} The record is devoid of any evidence as to what the "unusual gap" consisted of, whether it resulted from a defect in the step itself or from a bulge in the indoor/outdoor carpeting. While appellees argue that the condition of the steps is open and obvious, no evidence of the obvious nature of the condition, or that it was observed by any person, appears in the record. Therefore, we must ask the question, if the condition was so open and obvious, why didn't anyone see it?
 {¶ 26} As stated many years ago by Judge Cardozo in the case ofPalsgraff v. Long Island RR. Co., "the risk reasonably to be perceived defines the duty to be obeyed."[12]
 {¶ 27} In this case, appellees had a duty of ordinary care to maintain their premises in a reasonably safe condition to avoid unnecessary and unreasonable danger to business invitees such as Lewis. Appellees argue that this duty was vitiated by the open and obvious nature of the step on which Lewis fell. However, the cases decided under the "open and obvious" doctrine contain factual evidence that there was a hazardous step or protrusion that should have been observed by the injured party.
 {¶ 28} Thus, for example, the cases cited by appellee dealt with the following dangerous or hazardous conditions: bracket of a shopping-cart guardrail,[13] two-inch riser in a doorway,[14] stair leading to golf course tee consisted of two landscape ties and varied in height from other steps,[15] cement block used to hold exit door open,[16]
restroom floor in retail store six-and-one-half inches higher than showroom floor,[17] and elevated gazebo area containing restaurant table.[18]
 {¶ 29} Alternatively, other cases cited by appellees have found that, where a customer falls on the same step or steps that he or she had previously traversed, liability against the business owner will be denied.[19] Notably, in the cases just cited, the appellants did not have to contend with an overlay of indoor/outdoor carpeting that changed the contour, appearance, and navigability of the steps, and, thus, those cases are also distinguishable in this respect.
 {¶ 30} We conclude that the instant case does not fit within the "open and obvious" doctrine because there was no dangerous or hazardous condition that was "open and obvious," and Lewis did not fall on a step that was known to her previously.
 {¶ 31} We hasten to add that this court's review of the record, and the conclusions we have drawn therefrom, cannot be extended to all cases in which carpeting has been installed as an overlay to a walkway or steps. Business owners should not be discouraged from installing carpet where, due to climatic conditions or other valid reasons, pedestrians can more easily navigate walkways or steps where carpeting has been installed. Instead, our review is limited to the facts of this case, and the record before us, where the ability of the average person to observe the condition of the hazardous step is much in doubt. Had the hazardous condition of the step been readily observable, our decision would be different, but the facts before us compel us to view the condition of the steps in question as one that was not readily observable by the average reasonable pedestrian taking the usual precautions to descend a flight of steps.
 {¶ 32} In a summary judgment exercise, the evidence in the record is to be construed most strongly in favor of the nonmoving party.[20]
Rather than construing the evidence on this point "most strongly" in appellants' favor, the trial court gave insufficient consideration to the fact that the indoor/outdoor carpeting changed the contour, appearance, and navigability of the steps on the day in question. Thus, we conclude that summary judgment should not have been entered on the question of whether the condition of the steps was open and obvious.
 {¶ 33} The sole assignment of error is with merit. The judgment of the Geauga County Court of Common Pleas entering summary judgment in favor of the Ritondaro Funeral Home and Ritondaro is reversed, and this cause is remanded for further proceedings consistent with this opinion . COLLEEN MARY OTOOLE, J., concurs,
DIANE V. GRENDELL, dissents with Dissenting Opinion.
[1] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[2] (Citation omitted.) Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711.
[3] (Citation omitted.) Scheibel v. Lipton (1951), 156 Ohio St. 308,312. See, also, Light v. Ohio University (1986), 28 Ohio St.3d 66,68.
[4] (Citation omitted.) Scheibel v. Lipton, 156 Ohio St. at 314. See, also, Light v. Ohio University, 28 Ohio St.3d at 68.
[5] See Watts v. Rhodes (Mass. 1950), 91 N.E.2d 925, 926; Hickey v.Shoemaker (Ind.App.1960), 167 N.E.2d 487, 489; Savoy v. G.F. PooleMortuary (La.App.1952), 60 So.2d 108, 110.
[6] (Citation omitted.) Texler v. D.O. Summers Cleaners ShirtLaundry Co. (1998), 81 Ohio St.3d 677, 680.
[7] (Citation omitted.) Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203.
[8] Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus, approving and following Sidle v. Humphrey (1968),13 Ohio St.2d 45.
[9] Fink v. Gully Brook, Inc., 11th Dist. No. 2004-L-109,2005-Ohio-6567, at ¶ 12, citing Ward v. Wal-Mart Stores, Inc. (Dec. 28, 2001), 11th Dist. No. 2000-L-171, 2001 Ohio App. LEXIS 6006, at *5.
[10] (Citation omitted.) Schmitt v. Duke Realty, LP, 10th Dist. No. 04AP-251, 2005-Ohio-4245, at ¶ 10.
[11] Fink v. Gully Brook, Inc., 11th Dist. No. 2004-L-109,2005-Ohio-6567, at ¶ 16.
[12] Palsgraf v. Long Island RR. Co. (1928), 248 N.Y. 339, 344.
[13] Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573.
[14] Kornowski v. Chester Properties, Inc. (June 30, 2000), 11th Dist. No. 99-G-2221, 2000 Ohio App. LEXIS 3001.
[15] Maky v. Patterson, Inc. (July 5, 1996), 11th Dist. No. 96-G-1962, 1996 Ohio App. LEXIS 3002.
[16] Henry v. Dollar Gen. Store, 2d Dist. No. 2002-CA-47, 2003-Ohio-206.
[17] Leighton v. Hower Corp. (1948), 149 Ohio St. 72.
[18] Orens v. Ricardo's Restaurant (Nov. 14, 1996), 8th Dist. No. 70403, 1996 Ohio App. LEXIS 4944.
[19] Raflo v. Losantiville Country Club (1973), 34 Ohio St.2d 1;Newhardt v. Norton Health Foods (Apr. 29, 1998), 9th Dist. No. 18478, 1998 Ohio App. LEXIS 1778; Tieman v. Royal Athletics (May 20, 1996), 12th Dist. No. CA96-01-001, 1996 Ohio App. LEXIS 1982; Wilson v. KidsRoom (Sept. 22, 1997), 4th Dist. No. 96CA909, 1997 Ohio App. LEXIS 4341.
[20] Civ.R. 56(C).